**Laurence G. LIMSICO, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 90–70395.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 13, 1991.

Decided Dec. 9, 1991.

Gary H. Manulkin, Manulkin, Glaser & Bennett, Fountain Valley, Cal., for petitioner.

William J. Howard, Karen Fletcher Torstenson, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before WALLACE, Chief Judge, GOODWIN, Circuit Judge, and TANNER,* District Judge.

WALLACE, Chief Judge:

Limsico appeals from a decision by the Board of Immigration Appeals (Board) denying him relief from deportation. He argues that the Board's denial of asylum eligibility is not supported by substantial evidence. He also asserts that the Board abused its discretion in denying his motion to reopen. Indeed, he contends that the Board erred in deciding his motion to reopen before the Immigration and Naturalization Service (INS) stated its position on the motion. He further argues that the Board's refusal to suspend deportation violates the intent of Congress to keep families together. Finally, he alleges that the Board's rulings violated his right to due process. The Board had jurisdiction pursuant to 8 C.F.R. §§ 3.1(b)(2) and 3.2 (1991). We have jurisdiction over this timely petition pursuant to 8 U.S.C. § 1105a(a). We deny the petition to review and affirm the Board.

## I

Limsico is a twenty-nine-year-old native and citizen of the Republic of the Philippines. He entered the United States in December 1981, and was authorized to remain as a visitor until April 30, 1982. On February 8, 1982, he married Shannon Marie Van Slyke, a United States citizen, in Las Vegas, Nevada. Van Slyke petitioned for an immediate relative visa petition. On June 22, 1982, the INS denied her petition because she had failed to establish that her marriage to Limsico was bona fide. The INS began deportation proceedings against him under 8 U.S.C. § 1251(a)(1)(A) (formerly § 1251(a)(2)), as an alien who remained in the United States longer than permitted.

Limsico conceded deportability and applied for asylum and withholding of deportation, asserting a fear of persecution. After a hearing on May 23, 1986, an immigra-

tion judge (IJ) denied his application and request for voluntary departure. Limsico appealed this decision to the Board, and on July 11, 1989, filed a motion to reopen and an application for suspension of deportation. The Board affirmed the IJ's denial of asylum, withholding deportation, and voluntary departure. The Board also denied Limsico's motion to reopen.

## II

■ Limsico contends that the Board erred by denying his application for asylum eligibility. We review such denials for substantial evidence. *Estrada–Posadas v. INS*, 924 F.2d 916, 918 (9th Cir.1991) (*Estrada–Posadas*). An alien becomes eligible for asylum after demonstrating a well-founded fear of persecution in his country of citizenship. 8 U.S.C. § 1158(a). This well-founded fear must be both subjectively and objectively reasonable. *Estrada–Posadas*, 924 F.2d at 918. The objective component "requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Id.* Where corroborating documentary evidence is unavailable, an alien's testimony alone will suffice to prove a well-founded fear, but only if it is " 'credible, persuasive, and specific.' " *Id.* at 918–19, *quoting Aguilera–Cota v. INS*, 914 F.2d 1375, 1379 (9th Cir. 1990).

■ Limsico has failed to satisfy the objective component of the well-founded fear requirement. He testified that he feared persecution in the Philippines based on his Chinese ancestry. However, he failed to produce any evidence of instances of harm to him or his family. Moreover, his testimony as to violence against Chinese Filipinos was vague and speculative. He also admitted that many people, not just those of Chinese ancestry, had been harmed. General conditions of unrest do not establish a well-founded fear of persecution. We hold that substantial evidence supports the Board's conclusion that Limsico failed

---

* Honorable Jack E. Tanner, United States District Judge, Western District of Washington, sitting by designation.

to demonstrate a well-founded fear of persecution.

## III

■ Limsico contends that because the INS filed no opposition to his motion to reopen, the Board erred by denying it. Limsico points to no case requiring the Board to await the filing of an opposition by the INS prior to rendering a decision. Instead, he relies on 8 C.F.R. § 3.8, which outlines filing procedures for a motion when the alien is the moving party. Section 3.8(b) does not mention opposition briefs. Section 3.8(c), on the other hand, sets out filing procedures for a motion when the INS is the moving party. It specifically requires the alien to file an opposition brief within ten days of the INS motion. Absent an express statutory or regulatory requirement, we conclude that Congress did not intend to require the INS to file an opposition brief when the alien is the moving party. Therefore, the Board did not err in deciding the motion to reopen without an opposition from the INS.

## IV

Limsico next argues that the Board abused its discretion in denying his motion to reopen on the merits. The Board denied the motion because it found that Limsico failed to establish the requisite prima facie case of statutory eligibility for suspension of deportation. *See* 8 U.S.C. § 1254(a)(1). We review such Board findings for abuse of discretion. *Zacarias v. INS*, 921 F.2d 844, 854 (9th Cir.1990) (*Zacarias*), cert. granted, — U.S. —, 111 S.Ct. 2008, 114 L.Ed.2d 96 (1991); *Kaveh-Haghigy v. INS*, 783 F.2d 1321, 1322 (9th Cir.1986).

In order to make out a prima facie case, Limsico must allege and support by affidavit or other evidentiary material that (1) he has been physically present in the United States for a period of at least seven years; (2) during all such period he was and is of good moral character; and (3) the deportation would result in extreme hardship to him or to his spouse, parent, or child who is a citizen or lawful permanent resident. 8 U.S.C. § 1254(a)(1); *see Vasquez v. INS*,

767 F.2d 598, 601 (9th Cir.1985). The Board found that Limsico failed to establish both the morality and hardship factors.

■ To determine whether Limsico has established a prima facie case, the Board must look at the evidence in its entirety. *See Sakhavat v. INS*, 796 F.2d 1201, 1204–05 (9th Cir.1986). It must accept as true the facts stated in Limsico's affidavits unless they are inherently unbelievable. *Aviles–Torres v. INS*, 790 F.2d 1433, 1436 (9th Cir.1986). However, we have recognized that:

> where some of the evidence is developed at a hearing, the [Board] is of course free to interpret that evidence free from inferences in favor of the moving party. The [Board]'s conclusions derived from that evidence will be accepted by the reviewing court if it is supported by substantial evidence.

*Zacarias*, 921 F.2d at 854.

This practice of allowing the Board to consider evidence from a prior hearing is consistent with the rule that requires the Board to accept as true facts alleged in petitioner's affidavits in support of reopening. Because motions to reopen are decided without a hearing, we generally require the Board to accept the petitioner's affidavits as true. However, where the petitioner has had a hearing and the opportunity to oppose the allegations of wrongdoing, it is appropriate for the Board to consider this additional evidence at face value.

■ We review the Board's finding that Limsico failed to make a prima facie case of good moral character. The Board based its decision on affidavits and evidence developed at the prior hearing. Although Limsico's affidavits, if taken as true, showed him to be of good moral character, the evidence developed at the prior hearing demonstrated otherwise. At the hearing before the IJ, Limsico's sworn statement about his marriage to Van Slyke was entered into evidence. Limsico stated under oath that he "asked her if she would marry me for $2,000 to get my green card," paid her that amount after the ceremony, and never lived with Van Slyke.

Limsico did not attempt to explain or deny the sworn statement. Rather, he testified that he had intended to live with Van Slyke. It is within the authority of the administrative decision-maker to evaluate the evidence and determine whether a marriage was contracted to evade immigration laws. *See BuRoe v. INS*, 771 F.2d 1328, 1331 (9th Cir.1985) (*BuRoe*). Notwithstanding Limsico's subsequent claims to the contrary, the Board's determination that he intended to commit marriage fraud is supported by substantial evidence. That the finding was made pursuant to a previous request for relief in his deportation proceeding is irrelevant.

Limsico contends that the Board may not rely on the fraudulent marriage because the statute requires an alien to prove presence in the United States for "seven years immediately preceding the date of such application, and prove[ ] that *during all of such period* he was and is a person of good moral character." 8 U.S.C. § 1254(a)(1) (emphasis added). The alleged marriage took place more than seven years before his petition. Limsico seems to argue that events prior to the seven-year period cannot be considered.

We need not, however, reach that issue. The Board did not rest its finding on the fraudulent marriage itself. Rather, the Board found that Limsico continued to assert that the marriage was genuine. In his motion to reopen, Limsico maintained that he had intended to live with Van Slyke and that the IJ's finding that the marriage was fraudulent was "unfounded and unsubstantiated," despite the fact that he had submitted a contrary sworn statement at his hearing before the IJ. The Board concluded that these statements reflected his "continuous attempt to downplay his attempted fraud." The Board properly considered Limsico's attitude toward the marriage fraud during the seven years prior to his motion in determining his moral character. Although his affidavits, taken as true, show good moral character, this other evidence is contrary. The Board may properly consider both. *See Torres–Guzman v. INS*, 804 F.2d 531, 534 (9th Cir.1986) (both favorable and unfavorable factors should be weighed in determining moral character). Therefore, the Board did not abuse its discretion in determining that Limsico failed to make a prima facie case of good moral character.

Limsico is also required to make a prima facie case of physical presence and extreme hardship in order to be statutorily qualified for suspension of deportation. 8 U.S.C. § 1254(a)(1). Because we have determined that Limsico failed to make a prima facie case of good moral character, we do not need to reach the Board's findings as to extreme hardship. The Board's denial of Limsico's motion to reopen was not an abuse of discretion.

## V

Limsico further contends that the Board's denial of his motion to reopen violated the intent of Congress to avoid the separation of families. *See INS v. Errico*, 385 U.S. 214, 219–20 & n. 9, 224–25, 87 S.Ct. 473, 477–78 & n. 9, 479–80, 17 L.Ed.2d 318 (1966) (discussing legislative history of the Immigration and Nationality Act). However, merely having citizen or lawful permanent resident relatives in the United States is insufficient to require the Board to grant suspension of deportation. Congress has also expressed an intent to exclude aliens who lack good moral character. 8 U.S.C. § 1254(a)(1). The Board properly adhered to this statutory mandate.

## VI

Limsico also asserts that the Board's primary ground for denial of voluntary departure and underlying ground for denial of reopening consisted of allegations of attempted marriage fraud. The only evidence of marriage fraud is his sworn statement. He argues that his counsel was not on notice that this would be an issue, that Limsico did not have an adequate opportunity to be heard, and that this evidence is not reliable. Limsico contends that these assertions amount to a violation of due process.

There is no evidence that Limsico's counsel was surprised by the introduction of Limsico's sworn statement. His counsel submitted a letter with his updated asylum application specifically denying that the marriage was fraudulent. Limsico's counsel did not object when the testimony was entered into evidence. The nature of the marriage would obviously factor into any discretionary determination concerning possible relief from deportation. Limsico had an opportunity to rebut the evidence of marriage fraud and present evidence on his behalf. *See BuRoe*, 771 F.2d at 1332. The Board properly relied on Limsico's sworn statement in finding a fraudulent marriage. Disbelief of a defendant's testimony by the fact finder, along with other evidence, may provide the basis for a conclusion that the opposite of the testimony is true. *United States v. Stauffer*, 922 F.2d 508, 515 (9th Cir.1990). Impeachment evidence of a prior inconsistent statement can be used not only to show that the witness is not telling the truth, but also as substantive evidence of a contrary conclusion of fact. *Pope v. Savings Bank of Puget Sound*, 850 F.2d 1345, 1356 (9th Cir.1988).

PETITION DENIED AND BOARD AFFIRMED.