983 F.2d 1077
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Georges Maurice Sadak ROUMAN; Mourice Sadak Rouman; Zouzou
Sadak Rouman; Wedad Abidel Messeth Attalla
Rouman; Mirvat Maurice Rouman, Petitioners,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70431.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1992.
Decided Jan. 4, 1993.
 
 Before FEINBERG,* GOODWIN and SCHROEDER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The Rouman family petitions for review of the decision of the Board of Immigration Appeals ("Board") denying their request for asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1158(a), 1253(h). Petitioner Mirvat Rouman Sbait also appeals the Board's denial of her motion to reopen for consideration of a suspension of deportation claim pursuant to 8 U.S.C. § 1254(a)(1). We affirm the order of the Board.
 
 I.
 
 3
 The petitioner family consists of Maurice Rouman,[1] his wife Wedad, his son Georges, his daughter Mirvat, and his sister Zouzou. They are all natives and citizens of Egypt who entered the United States on September 13, 1982 as nonimmigrant visitors. The Rouman family was charged with deportability for overstaying their nonimmigrant visitor visas under § 241(a)(2) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(2). The Roumans conceded deportability and filed petitions for asylum.
 
 
 4
 The Roumans are Coptic Orthodox Christians, a religious minority in Egypt comprising approximately eight percent of the population. They assert that if they return to Egypt they will face persecution by the Muslim Brotherhood, a radical fundamentalist group, having been singled out for persecution because of Mr. Rouman's proselytizing activities. Specifically, Mr. Rouman testified that his practice of preaching the Christian faith to Moslems and the fact that he played an instrumental role in the conversion of one Moslem to Christianity in 1973 are the reasons why he and his family have been targets of the Muslim Brotherhood.
 
 
 5
 The Roumans cite several acts of violence by the Muslim Brotherhood between 1976 and 1980 in support of their petition for asylum. On two occasions, for example, Mr. Rouman was attacked by members of the Muslim Brotherhood. As a result of one of these incidents, Mr. Rouman suffered a serious eye injury that led to the loss of vision in his left eye. The Roumans also point to acts of vandalism on their home and kidnapping attempts involving Rouman's daughter and sister, all of which they believe were instigated by the Muslim Brotherhood.
 
 
 6
 The Roumans submitted documentary evidence corroborating their membership in the Coptic Church and Mr. Rouman's proselytizing activities among Moslems. They also submitted affidavits from individuals with expertise in the area of Egyptian religious minorities stating that Coptic Christians suffer discrimination in Egypt and that those who convert Moslems are guilty of apostasy and subject to death under Islamic law.
 
 
 7
 On May 1, 1986, the Immigration Judge ("IJ") found the appellants deportable as charged and denied their petitions for asylum and withholding of deportation. The IJ concluded that the incidents cited by the Roumans were isolated and infrequent, and did not amount to persecution. He further held that the Roumans failed to show that the government was unable or unwilling to protect them from the conduct of the Muslim Brotherhood. Appellants appealed this decision to the Board. The Board affirmed the IJ's ruling and denied Mirvat Rouman Sbait's motion to reopen deportation proceedings for consideration of a suspension of deportation request.
 
 II.
 A. Petition for Asylum
 
 8
 To establish eligibility for asylum under Section 208(a) of the INA, 8 U.S.C. § 1158(a), an alien must present "specific facts" to show either past persecution or a "well-founded fear" of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Lopez v. INS, 775 F.2d 1015, 1016 (9th Cir.1985). In addition, the appellants must show that the persecution is by the government or by a group that the government is unable or unwilling to control. Desir v. Ilchert, 840 F.2d 723, 728 n. 5 (9th Cir.1988); McMullen v. INS, 658 F.2d 1312, 1315 (9th Cir.1981). A decision of the Board will be affirmed if it is supported by "substantial evidence" in the record. Limsico v. INS, 951 F.2d 210, 212 (9th Cir.1991).
 
 
 9
 First, the Roumans challenge the Board's conclusion that there was insufficient evidence that the Muslim Brotherhood was responsible for several of the incidents described. They also dispute the Board's further finding that even if the harms suffered by Rouman in 1976 and 1978 were due to his religious beliefs and activities, they were isolated events that did not amount to persecution and did not support a well-founded fear of future persecution. The Board supported its conclusion by observing that the Roumans resided in the same place for nine years after Rouman helped convert Mr. Haman in 1973 despite the danger they claimed they were facing as a result of that conversion, and that there were no instances of harassment during the year and a half prior to their departure from Egypt.
 
 
 10
 Second, the Roumans contest the Board's conclusion that there was insufficient evidence to show that the Egyptian government either participated in the persecution of Coptic Christians or that they were unable or unwilling to control the Muslim Brotherhood. The Roumans submitted documentary and testimonial evidence that Egyptian officials acquiesce in and tacitly condone the persecution perpetrated upon Coptic Christians by the Muslim Brotherhood. The Board, however, found the State Department's advisory opinion of the merits of the Roumans' claim to be more credible on this issue. The State Department acknowledged that "many Copts and other Christians face prejudice and occasional acts of individual discrimination from Egypt's Islamic majority," but concluded that "there is no evidence that these acts are systematic, or that they are officially inspired or sanctioned."
 
 
 11
 There is no dispute that the Roumans have suffered some mistreatment at the hands of the Muslim Brotherhood, but the Board's finding that these instances do not amount to persecution or establish a well-founded fear of future persecution is supported by substantial evidence in the record. Furthermore, the Roumans are unable to overcome the conclusion that the government is not unable or unwilling to control the Muslim Brotherhood. See Elnager v. INS, 930 F.2d 784, 789 (9th Cir.1991).
 
 B. Withholding of Deportation
 
 12
 Section 243(h) of the INA, 8 U.S.C. § 1253(h), prohibits the Attorney General from deporting any alien who can show a "clear probability of persecution." Mabugat v. INS, 937 F.2d 426, 429 (9th Cir.1991). The petitioners thus face a higher burden of proof on their withholding of deportation claim than they do on their petition for asylum claim. They have to show that " 'it is more likely than not' " that they will face persecution if forced to return to their country. Lopez v. INS, 775 F.2d 1015, 1016 (9th Cir.1985) (quoting INS v. Stevic, 467 U.S. 407, 424 (1984)). Because the Roumans have failed to satisfy the more liberal asylum standard, their claim for withholding of deportation must also fail.
 
 C. Motion to Reopen
 
 13
 Petitioner Mirvat Rouman Sbait challenges the Board's denial of her motion to reopen deportation proceedings for consideration of suspension of deportation. Sbait must state new facts to be presented at the reopened hearing and establish prima facie eligibility for the relief sought to secure a motion to reopen. Platero-Reymundo v. INS, 807 F.2d 865, 867 (9th Cir.1987). To qualify for suspension of deportation, Sbait must show that she has been present in the United States for a continuous seven-year period, that she is a person of good moral character, and that her deportation would result in extreme hardship to her or her family. 8 U.S.C. § 1254. The Board has the discretion to construe "extreme hardship" narrowly, but its exercise of discretion must not be "arbitrary, irrational, or contrary to law." Saldana v. INS, 762 F.2d 824, 827 (9th Cir.1985) (citations omitted), modified, 785 F.2d 650 (9th Cir.1986).
 
 
 14
 The Board denied Sbait's motion to reopen on the ground that she failed to make a showing of extreme hardship to support prima facie eligibility of suspension of deportation. Sbait charges that the Board abused its discretion by failing properly to consider all of the relevant factors underlying her claim and by failing to articulate the reasons for its conclusion.
 
 
 15
 This argument is without merit. Sbait based her claim of extreme hardship on her marriage to a United States citizen, stating that because her husband is originally from Israel he had no right to live with her in Egypt, and the United States would be the only country where they could live together. She also cited her close ties to her father and her older brother, both of whom now have temporary residence status in the United States. In weighing the equities, the Board held that Sbait's marriage was entitled to less weight because it had occurred after an administrative finding of deportability. See Vasquez v. INS, 767 F.2d 598, 601 (9th Cir.1985). In addition, the Board found that because of her marriage, Sbait had an alternative means of legalization thereby mitigating her claim of extreme hardship.[2] The Board did not abuse its discretion in denying the motion to reopen.
 
 
 16
 The order of the Board is AFFIRMED.
 
 
 
 *
 The Honorable Wilfred Feinberg, Senior Circuit Judge of the U.S. Court of Appeals for the Second Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Maurice Rouman acquired permanent resident status on November 29, 1990. We nonetheless review his claim because the claims of the rest of his family depend largely upon the merits of Mr. Rouman's petition
 
 
 [2]
 The Board observed, however, that because Sbait had married after the commencement of deportation proceedings, she might be required to live outside of the United States for two years before becoming eligible for a visa pursuant to § 204(g) of the INA. The Board also noted that this requirement could be waived under § 702(c) of the Immigration Act of 1990 if Sbait could establish by clear and convincing evidence that she entered her marriage in good faith
 The Roumans argue that the good-faith marriage waiver enunciated in § 702(c) undermines the Board's holding that Sbait's marriage is entitled to less weight because it took place after the start of deportation proceedings. Respondent is correct that petitioners misconstrue the effect of the good-faith marriage waiver on the current proceedings. The good-faith marriage waiver has nothing to do with the weighing of equities in a suspension of deportation claim and does not enter into the analysis.