5 F.3d 536
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Luis Miguel Del Rosario GUERRA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70656.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 15, 1993.
Decided Sept. 14, 1993.
 
 Petition for Review of an Order of the Board of Immigration Appeals, INS No. Ave-hpi-srn.
 BIA
 REMANDED.
 Before: GOODWIN, HUG and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Luis Miguel del Rosario Guerra, a citizen of Chile, petitions for review of the Board of Immigration Appeals' ("BIA" or "Board") denial of his motion to reopen his deportation proceedings to allow him to apply for suspension of deportation. 8 C.F.R. Secs. 3.2, 3.8; 8 U.S.C. Sec. 1254(a). The Board denied Guerra's motion stating that he had failed to make a prima facie case of eligibility for suspension of deportation because he had not demonstrated that his deportation would result in extreme hardship to his citizen children. 8 U.S.C. Sec. 1254(a)(1). Guerra argues that the BIA failed to consider all the evidence before it and narrowly focused on but one aspect of his claim that extreme hardship would result from his deportation. The Board had jurisdiction under 8 C.F.R. Secs. 3.1(b)(2), 242.21. This court's jurisdiction rests on 8 U.S.C. Sec. 1105a(a) (Immigration and Nationality Act). The Board's denial of a motion to reopen is reviewed for abuse of discretion. INS v. Rios-Pineda, 471 U.S. 444, 449 (1985); INS v. Jong Ha Wang, 450 U.S. 139, 144-45 (1981) [hereinafter Jong Ha ]; Limsico v. INS, 951 F.2d 210, 213 (9th Cir.1991). Because we find the BIA abused its discretion in failing to consider all the evidence Guerra presented in support of his claim of extreme hardship, we remand to the BIA for its consideration of his motion to reopen and the appended exhibits.
 
 I.
 
 3
 Guerra entered the United States in January 1984 on a student nonimmigrant "F-1" visa. Fearing persecution if he returned to Chile, he did not leave when the visa expired six months later.[1] In response to an order to show cause, Guerra conceded deportability but requested asylum and withholding of deportation. The IJ denied relief but granted voluntary departure. Guerra filed a notice of appeal based on the denial of asylum and withholding of deportation. (AR at 53). While his appeal from the IJ's decision was pending, Guerra met the seven-year requirement of continuous physical presence for suspension of deportation. 8 U.S.C. Sec. 1254(a)(1).[2] Before the BIA decided the asylum and withholding of deportation claims, Guerra moved to reopen based on his eligibility for alternative relief. Attached to the motion were numerous supporting exhibits (AR at 40, 41-52, 104-22, 124).
 
 
 4
 Guerra sought to establish that he met all three statutory requirements for relief under the suspension of deportation provisions. To show "extreme hardship," he stressed his close connection to his family and their dependence on his "financial, moral, and emotional support." He also asserted that deportation would cause him "extreme emotional and psychological hardship." (AR at 34-36) The exhibits reflect that he has held a steady job with a janitorial service, has been promoted from gardner to supervisor, and has earned a certificate of recognition for his good work. (AR at 122). A supervisor who has known him since 1984 relates that Guerra works hard, is a "responsible, dedicated and loyal employee," and that he considers him a "giving and loyal friend." (AR at 48). Tax returns indicate that he has paid his taxes and does not depend on state aid. (AR at 104-06, 108-13, 115-16, 118-19). Through his employment Guerra is able to provide health insurance to his family. (AR at 44).
 
 
 5
 Guerra married his wife in 1990 after they had lived together for several years after she had borne their United States citizen child. His wife is a Peruvian citizen. She has also applied for asylum and meets the residency requirements for suspension of deportation. (AR at 34). Guerra is in the process of adopting his stepson, a United States citizen, six years old at the time Guerra filed for reopening. (AR at 38, 45). He argues that his presence in the family at this time is of great importance. According to the accounts of his wife, friends and associates, Guerra is a loving family man who has been devoted to his two children and has provided for their material needs. (AR at 46, 48, 52). His daughter was four when he applied for suspension of deportation. (AR at 38).
 
 
 6
 Guerra has been active in the Spanish Speaking Citizen's Foundation since 1984. An associate of the Foundation writes that Guerra has contributed a great deal to the community: "Mr. Guerra is an amicable and simple person that communicates with all the other persons through his good deeds ... I will greatly appreciate any attention given him for the great help he has given others." (AR at 46-47). As a native Spanish speaker, he assists a Spanish teacher who does not speak Spanish as her first language. (AR at 49). In addition, the record reflects that Guerra has enrolled in English courses at the ELS Language Center approved by the INS. (AR at 120, 124).
 
 
 7
 In its decision, the BIA affirmed the dismissal of Guerra's asylum and withholding of deporation claims and denied the motion to reopen. Stating that "there is nothing in the record to warrant a discretionary denial of suspension of deportation," and that "no discretionary basis for denial of a motion to reopen" existed, the Board denied the motion to reopen on the ground that Guerra had not made a prima facie case of eligibility for suspension. (AR at 4). In its view, Guerra had failed to demonstrate that "extreme hardship" would result to his children because he "failed to enlighten [the] Board as to [the] specific circumstances of his citizen children which would warrant the suspension of his deportation." (AR at 5).
 
 II.
 
 8
 Under Section 1254(a), a deportable alien who meets the statutory eligibility requirements and persuades an immigration judge to exercise favorable discretion qualifies for suspension of deportation. Exercising the "broad discretion" vested in it, Rios Pineda, 471 U.S. at 449, the Board may deny a motion to reopen to consider suspension of deportation if the petitioner (1) fails to establish a prima facie case for relief, (2) if he presents no new and material evidence, or (3) if he would not be entitled to the exercise of its discretion.[3] See INS v. Abudu, 485 U.S. 94, 104-05 (1988); see also INS v. Doherty, 112 S.Ct. 719, 725 (1992).
 
 
 9
 A motion to reopen must be accompanied by "affidavits or other evidentiary material." 8 C.F.R. Sec. 3.8; Vasquez v. INS, 767 F.2d 598, 601 (9th Cir.1985). The evidence must establish statutory eligibility for relief. To make this prima facie showing, the petitioner must demonstrate that (1) he has been physically present in the United States for at least seven years; (2) he is of good moral character; and (3) the deportation would result in extreme hardship to him or his spouse, parent, or child who is a citizen or lawful permanent resident. 8 U.S.C. Sec. 1254(a)(1); see Limsico, 951 F.2d at 213.
 
 
 10
 The Supreme Court has approved the denial of a motion to reopen to consider suspension of deportation where "allegations of hardship were in the main conclusory and unsupported by affidavit." Jong Ha, 450 U.S. at 143. However, where evidence is presented, "[t]o determine whether [a petitioner] has established a prima facie case, the Board must look at the evidence in its entirety. It must accept as true the facts stated in [the supporting] affidavits unless they are inherently unbelievable." Limsico, 951 F.2d at 213 (citing Sakhavat v. INS, 796 F.2d 1201, 1204-05 (9th Cir.1986); Aviles-Torres v. INS, 790 F.2d 1433, 1436 (9th Cir.1986)). All factors substantiating a claim of extreme hardship must be viewed in conjunction with one another. See Mejia-Carrillo v. INS, 656 F.2d 520, 522-23 (9th Cir.1981); Jong Shik Choe v. INS, 597 F.2d 168, 170 (9th Cir.1979), disagreed with on other grounds, Vasquez, 767 F.2d at 601. Even though the BIA has the "authority to construe 'extreme hardship' narrowly should [it] deem it wise to do so," Jong Ha, 450 U.S. at 145, its "discretion may be properly exercised only if it fully considers the relevant facts. Failure to consider all the factors which bear on extreme hardship is an abuse of the Board's discretion." Mejia-Carrillo, 656 F.2d at 522.
 
 A. Extreme Hardship to Children
 
 11
 The Board denied Guerra's motion to reopen because it viewed the motion as conclusory in its allegations of extreme hardship to the children. Finding his submissions "unenlighten[ing]," it stated that it lacked information as to the specific circumstances of the children. Guerra argues that the Board failed to draw natural inferences from the motion and accompanying exhibits. (Petitioner's Brief at 8). The government places a narrow focus on Guerra's discussion of extreme hardship in the motion for reopening. In its brief, it contends that Guerra has failed to make a sufficient showing of extreme hardship in that document (the motion) and cannot rely on the appended submissions (in its view, relevant only to his good moral character). (Respondent's Brief at 10-11.)
 
 
 12
 Under Hassan v. INS, 927 F.2d 465, 468 (9th Cir.1991), "[e]xtreme hardship will not be found absent a showing of significant actual or potential injury." However, "[t]he common results of deportation or exclusion are insufficient to prove extreme hardship." Id. (considering circumstances of an alien convicted of fraud and theft undergoing exclusion proceedings). Guerra emphasizes in his motion that his children depend on him for financial, moral, and emotional support. Since his salary and health insurance provide the bulk of the household's support, undoubtedly the family would suffer financially were he deported.
 
 
 13
 Economic factors, while relevant, are insufficient alone to support a claim of extreme hardship. Hassan, 927 F.2d at 468, n. 2; Zamora-Garcia v. INS, 737 F.2d 488, 491 (5th Cir.1984). Guerra relies heavily on the emotional and psychological loss his absence would work on the children. He makes the point that their youth and his formal adoption of the young boy demand his presence. The motion to reopen states "these children would be deprived of the father-child relationship at a stage in their lives when his presence would most be needed." (AR at 35). The affidavits label Guerra a "family man" and a "caring" father. (AR at 48, 52). His wife relates that theirs is "a very united family." (AR at 52). The family attends church regularly and makes educational expeditions. Id. In his briefs before this court and his motion to the BIA, Guerra represents that he will leave the children behind with his wife if deported.[4] Petitioner's Brief at 8-9, 11; AR at 35. See Cerrillo-Perez v. INS, 809 F.2d 1419, 1423 (9th Cir.1987) "[f]aced with similar dilemmas, parents have often made the painful choice of dividing their family in order to provide members of the younger generation with an opportunity for a better life"); Mejia-Carrillo, 656 F.2d at 522.
 
 
 14
 Although the Board framed its criticism of Guerra's motion to reopen in terms of his failure to give specific facts, the record, comprised of the motion and exhibits contains many specifics. The Board wrongly suggests that specifics were not pressed. It seemingly confuses two distinct questions: whether Guerra failed to present specific evidence with whether he failed to convince. If the Board is simply unconvinced (rather than "unenlightened") it must explain why the evidence, considered as a whole, does not constitute a prima facie showing of extreme hardship. See Limsico, 951 F.2d at 213 ("To determine whether [a petitioner] has established a prima facie case, the Board must look at the evidence in its entirety" ); Vasquez, 767 F.2d at 603 ("Our result in this case does not relieve the BIA or the immigration judge of their responsibility to consider all of the evidence before them").
 
 B. Extreme Hardship to Guerra
 
 15
 The Board erroneously describes Guerra's extreme hardship argument as limited to the hardship his children would suffer. It notes, "[t]he Respondent contends that his deportation would result in extreme hardship to his United States citizen child and stepchild, and on that basis, he requests that his deportation be suspended." (AR at 5) (emphasis added). While Guerra did highlight the hardship to his children, he also urged his own hardship as a basis for relief from deportation. (AR at 35, 36). Quite apart from his reluctance to return to the homeland he fled as a student, Guerra's petition for reopening documents his connection to the United States. Like Cerrillo-Perez, Guerra has submitted affidavits from members of the community "go[ing] on public record" that he has contributed to the community and adapted to 809 F.2d at 1424. (AR at 46-48). His willingness to help others improve their ability to teach Spanish, and to take English courses, himself, suggests that he is personally committed to becoming part of the fabric of a multicultural American society. He has friends who consider him "giving and loyal" and to whom he is attached. (AR at 48). His long tenure with the janitorial service, public recognition, and testimonials that his services are appreciated and his job secure, also contribute to proof of his rootedness in the community. (AR at 41, 48, 122).
 
 
 16
 In his motion to reopen Guerra relies on BIA precedent holding that an individual's community ties and contributions are, among the several factors relevant to an assessment of extreme hardship. (AR at 35-36). Matter of Anderson, 16 I & N Dec. 596 (BIA 1978); see also Cerrillo-Perez, 809 F.2d at 1424; Zavala-Bonilla v. INS, 730 F.2d 562, 568 (9th Cir.1984) (observing that petitioner has "formed friendships and attachments.... [that] are pertinent to the hardship determination, [but which] the BIA has failed to discuss"), disagreed with on other grounds, Bolanos-Hernandez v. INS, 767 F.2d 1277, 1282 nn. 8 & 10 (9th Cir.1984).
 
 III.
 
 17
 Guerra pressed more than one basis for suspension of deportation. He correctly relied on the law recognizing multiple bases for a claim of extreme hardship and elaborated several of these in his motion and appended exhibits. Because this evidence was relevant to the Board's determination, we find that the BIA abused its discretion in not considering it. We therefore remand to the BIA to consider the specific evidence of extreme hardship to him and his family which he presented in his motion to reopen and in his exhibits.
 
 
 18
 REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Guerra has not appealed the denial of his requests for asylum and withholding of deportation
 
 
 [2]
 The BIA noted that since the "appeal was not taken without merit," it would not exercise its discretion to deny reopening on the basis that the seven-year requirement was met while Guerra's application was pending. (AR at 4). It distinguished Guerra's circumstances from those of aliens who use a string of frivolous appeals to remain in the country for seven years. See, e.g., Agustin v. INS, 700 F.2d 564 (9th Cir.1983) (petitioner took three appeals from a decision of the Board); see also INS v. Rios Pineda, 471 U.S. 444, 445-49 (1985); Sida v. INS, 764 F.2d 1319, 1320-21 (1985)
 
 
 [3]
 The second and third grounds for denial are not in dispute
 
 
 [4]
 His wife may be eligible for asylum or suspension of deportation. See supra at 3-4