17 F.3d 393
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mussa Ali ALIYAN, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-70588.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 14, 1994.
Decided Feb. 1, 1994.
 
 1
 Before: GOODWIN, WIGGINS, and BRUNETTI, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Mussa Ali Aliyan petitions for review of a Board of Immigration Appeals (BIA) order. The BIA affirmed an immigration judge's (IJ's) denial of Aliyan's motion to reopen so that he may apply for asylum, withholding of deportation and suspension of deportation. Aliyan's motion to reopen was denied on the ground that Aliyan failed to establish prima facie eligibility for the underlying relief sought. We have jurisdiction under 8 U.S.C. Sec. 1105a(a). We review the BIA's denial of a motion to reopen for an abuse of discretion. INS v. Doherty, 112 S.Ct. 719, 725 (1992). We deny the petition.
 
 BACKGROUND
 
 4
 Aliyan is a 34-year old Palestinian native and citizen of Israel. He entered the United States on August 16, 1982 as a nonimmigrant student with permission to remain until December 31, 1986. He married a United States citizen on October 26, 1986, but the couple separated in July of 1987. On October 14, 1988, an Order to Show Cause was issued, charging him with deportability under section 241(a)(2) of the Immigration and Naturalization Act, 8 U.S.C. Sec. 1251(a)(2), for having overstayed.[1]
 
 
 5
 On November 3, 1988, Aliyan conceded deportability, but requested an opportunity to apply for asylum under section 208(a) of the Act, 8 U.S.C. Sec. 1158(a),[2] and withholding of deportation under section 243(h) of the Act, 8 U.S.C. Sec. 1253(h).[3] He asserted that, as a Palestinian Arab, he would face persecution if he were returned to Israel. As the basis for his assertion, Aliyan alleged the following. First, Arabs in general are discriminated against in Israel. Second, he in particular would be singled out because he would be associated with his brother who has been imprisoned since 1979 for being a member of a terrorist organization. Third, his cousin has been incarcerated for 21 days simply because he was related to Aliyan's brother. Finally, in August of 1989, a group of Palestinian Arabs, including his brothers, held a funeral march to protest the death of a young Palestinian man killed by Israeli police. Gunshots were fired at the marchers. Many, though none of Aliyan's brothers, were arrested for having raised the Palestinian flag, which is banned in Israel. Aliyan admitted, however, that he has never been detained, interrogated, convicted or imprisoned in Israel.
 
 
 6
 Aliyan alleges that he received ineffective assistance of counsel throughout these proceedings. As a result of the ineffective assistance, he asserts, he failed to file a timely application for asylum. Furthermore, he alleges, he believed he could not pursue his claim for asylum at this time, but could only renew his claim at a later date. In addition, he asserts, he also believed he was eligible for a visa based on his ownership of a delicatessen. Thus, he withdrew his application for asylum.
 
 
 7
 On August 1, 1989, Aliyan filed a motion to reopen so that he could request asylum, withholding of deportation and suspension of deportation.[4] He argued that he had not made a knowing and intelligent waiver of his right to apply for asylum. The IJ denied the motion to reopen. The IJ held that Aliyan failed to establish prima facie eligibility for the underlying relief sought.
 
 
 8
 The BIA affirmed. First, Aliyan did not show that he had a well-founded fear of persecution. Rather, his claim for asylum was based on "conclusory" and "vague" evidence. See INS v. Jong Ha Wang, 450 U.S. 139, 143 (1981) (per curiam); Larimi v. INS, 782 F.2d 1494, 1497 (9th Cir.1986). Second, Aliyan did not show that he would face a clear probability that his life or freedom would be threatened in Israel. See INS v. Stevic, 467 U.S. 407, 413-430 (1984). Finally, Aliyan did not show that either he or his estranged United States citizen wife would suffer extreme hardship upon his returning to Israel. One, Aliyan had been separated from his wife since 1987. Two, Aliyan's parents and six siblings live in Israel. Three, Aliyan had no significant ties to the United States other than his delicatessen.
 
 
 9
 After concluding that the IJ acted properly in finding that Aliyan was ineligible for the underlying relief sought, the BIA declined to address Aliyan's due process claim. The BIA held that the prima facie eligibility findings were dispositive.
 
 DISCUSSION
 I. Prima Facie Eligibility for Relief
 
 10
 The BIA must deny a motion to reopen if the alien fails to establish a prima facie case for the underlying relief sought. Wang, 450 U.S. at 141; see also Maroufi v. INS, 772 F.2d 597, 599 (9th Cir.1985); Vasquez v. INS, 767 F.2d 598, 603 (9th Cir.1985). Accordingly, an alien must present evidence which satisfies the statutory requirements for the underlying relief. See Limsico v. INS, 951 F.2d 210, 213 (9th Cir.1991); Larimi, 782 F.2d at 1496. Such evidence must include affidavits or other supporting evidentiary material. 8 C.F.R. Sec. 3.8(a); see Limsico, 951 F.2d at 213; Larimi, 782 F.2d at 1496. In addition, the alien must corroborate his testimony if his evidence includes only affidavits based solely on his own conclusory statements. See Saballo-Cortez v. INS, 761 F.2d 1259, 1264 (9th Cir.1985); Espinoza-Martinez v. INS, 754 F.2d 1536, 1540 (9th Cir.1985) (noting that "undocumented claims of persecution may amount to nothing more than the alien's statement of opinion"). In turn, however, the BIA must accept as true the facts stated in the affidavits unless they are "inherently unbelievable." Maroufi, 772 F.2d at 600.
 
 
 11
 a. Asylum
 
 
 12
 Aliyan failed to establish prima facie eligibility for asylum. He did not demonstrate a well-founded fear of persecution. Specifically, Aliyan did not present "credible, direct and specific evidence" to prove that his fear is reasonable. See Diaz-Escobar v. INS, 782 F.2d 1488, 1492 (9th Cir.1986) (holding that the well-founded fear must be both genuine and reasonable); Espinoza-Martinez, 754 F.2d at 1540 (noting that "specific" and "objective" evidence is required to meet the "well-founded fear" burden). Aliyan offered the following evidence: his brother's imprisonment, his cousin's detainment, the mass arrests made during the funeral march, the discriminatory laws enacted against Palestinian Arabs, and the widespread violence suffered by Palestinian Arabs.
 
 
 13
 First, the evidence is not sufficiently specific. For example, Aliyan offers the experiences of his brother and cousin as evidence of the persecution he would face. Indeed, their experiences are relevant. See Bolanos-Hernandez v. INS, 767 F.2d 1277, 1283 n. 11 (9th Cir.1984) (noting that whether an alien has a well-founded fear of persecution includes consideration of "the experiences of others"). But, their experiences do not specifically pertain to Aliyan's experience. Furthermore, any inference of persecution that might otherwise have been drawn from their experiences was weakened by the fact that Aliyan was, in actuality, neither harmed nor harassed on account of his brother at any time during the three years which elapsed between his brother's imprisonment and his own departure from Israel.
 
 
 14
 Similarly, Aliyan presents newspaper articles detailing the widespread violence against Palestinian Arabs. But, evidence of widespread violence is not sufficiently specific to establish eligibility for asylum. See Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir.1988) (per curiam) ("Knowledge of random violence does not substantiate a claim of persecution under the immigration laws."); Martinez-Romero v. INS, 692 F.2d 595, 596 (9th Cir.1982) (per curiam) (holding that "special circumstances" must be present).
 
 
 15
 Furthermore, the evidence is not credible. For example, Aliyan insists that he would face certain persecution on account of his brother if he were returned to Israel. First, Aliyan admits that he has never been detained, interrogated, convicted or imprisoned in Israel. Sanchez v. INS, 707 F.2d 1523, 1527-28 (D.C.Cir.1983) (per curiam); see Saballo-Cortez, 761 F.2d at 1264. Second, none of Aliyan's other brothers has been singled out by the Israeli government on account of their imprisoned brother. See Rodriguez-Rivera, 848 F.2d at 1006 (upholding a denial of asylum where an alien's family continued to live "unmolested" in the alien's native land); see also Cuadras v. INS, 910 F.2d 567, 571 (9th Cir.1990) (upholding denial of asylum where possibility of persecution based on family relationship was too speculative). Third, Aliyan was granted permission by the Israeli government to exit Israel. The granting of an exit visa is strong evidence of the absence of persecution. See Rodriguez-Rivera, 848 F.2d at 1006; Saballo-Cortez, 761 F.2d at 1264.
 
 
 16
 Similarly, Aliyan suggests that he will be singled out because of his political beliefs. But, Aliyan offered no evidence that he openly expressed any political opinion or participated in any political activity while living in Israel or since departing that country. See Saballo-Cortez, 761 F.2d at 1264 (upholding an IJ's denial of relief in part because the applicant produced no evidence that he belonged to any political organization or had taken any political position).
 
 
 17
 b. Withholding of Deportation
 
 
 18
 Aliyan necessarily failed to establish prima facie eligibility for withholding of deportation. "Since the well-founded fear standard is more liberal than the clear probability standard, a failure to prove [eligibility for asylum] necessarily means a failure to prove eligibility for a withholding of deportation." Elnager v. INS, 930 F.2d 784, 789 (9th Cir.1991); see Larimi, 782 F.2d at 1496-97.
 
 
 19
 c. Suspension of Deportation
 
 
 20
 Finally, Aliyan failed to establish prima facie eligibility for suspension of deportation. Aliyan did not demonstrate that deportation would cause extreme hardship. The BIA has the authority to construe the term "extreme hardship" narrowly. Wang, 450 U.S. at 145; Ramirez-Durazo v. INS, 794 F.2d 491, 498 (9th Cir.1986); Bu Roe v. INS, 771 F.2d 1328, 1333 (9th Cir.1985). We must not substitute our own definition of extreme hardship for that of the BIA. Hyun Joon Chung v. INS, 720 F.2d 1471, 1475 (9th Cir.1983), cert. denied, 467 U.S. 1216 (1984). The BIA's decision may be reversed only for an abuse of discretion, such as a failure to consider all relevant facts. Ramirez-Durazo, 794 F.2d at 498.
 
 
 21
 The BIA's order indicates that the BIA did consider all of Aliyan's evidence of extreme hardship. For example, the BIA specifically acknowledged Aliyan's estranged wife by noting that the couple had been separated since 1987. Given that the couple had already been separated for five years, the BIA acted reasonably in concluding that there is a low probability of reconciliation. Furthermore, the couple separated only ten months after marrying. Moreover, simply having a relative who qualifies under section 244 of the Act, 8 U.S.C. Sec. 1254, is not sufficient to require a grant of suspension of deportation. Limsico, 951 F.2d at 214. Finally, the mere fact that deportation will separate family members does not in itself constitute "extreme hardship." Sullivan v. INS, 772 F.2d 609, 611 (9th Cir.1985).
 
 
 22
 Similarly, the BIA specifically recognized Aliyan's economic hardship by acknowledging that Aliyan owned a delicatessen. The mere showing of economic detriment is, however, insufficient to trigger suspension of deportation relief. Wang, 450 U.S. at 144-46; Bu Roe, 771 F.2d at 1333-34.
 
 
 23
 Finally, the BIA acted properly in ignoring Aliyan's fear of persecution in determining whether he would suffer extreme hardship if he were returned to Israel. See Kashefi-Zihagh v. INS, 791 F.2d 708, 710 (9th Cir.1986) ("[T]he BIA may conclude that claims of political persecution have no relation to a determination of 'extreme hardship'...."); Hee Yung Ahn v. INS, 651 F.2d 1285, 1288 (9th Cir.1981) (noting that "political claims must be considered under [withholding of deportation] rather than [suspension of deportation]").
 
 
 24
 Accordingly, the BIA did not abuse its discretion in denying Aliyan's motion to reopen his deportation proceedings. Indeed, the BIA must deny Aliyan's motion to reopen because he failed to establish prima facie eligibility for any of the three forms of underlying relief he sought. Wang, 450 U.S. at 141.
 
 II. Denial of Due Process
 
 25
 Aliyan contends that his due process rights were violated because he received ineffective assistance of counsel at the deportation proceedings. See Lopez v. INS, 775 F.2d 1015, 1017 (9th Cir.1985). Aliyan argues that the ineffective assistance led him to waive the right to apply for asylum unknowingly. Aliyan further asserts that he was prejudiced by the ineffective assistance because it prevented him from presenting to the IJ his application for asylum. See Garcia-Jaramillo v. INS, 604 F.2d 1236, 1239 (9th Cir.1979), cert. denied, 449 U.S. 828 (1980). We disagree.
 
 
 26
 First, the BIA was not required to make findings on Aliyan's due process claim because the resolution of this claim was not necessary to the result the BIA reached. INS v. Bagamasbad, 429 U.S. 24, 25 (1976) (per curiam). The BIA is authorized to deny a motion to reopen solely on the basis that an alien has not established a prima facie eligibility for the underlying relief sought. INS v. Abudu, 485 U.S. 94, 104 (1988). Aliyan failed to make the requisite prima facie showing for any of the three forms of underlying relief sought. Therefore, the BIA did not need to consider Aliyan's due process claim. Bagamasbad, 429 U.S. at 26.
 
 
 27
 Second, Aliyan was not prejudiced by the ineffective assistance. Although the IJ did not consider the merits of his application for asylum, the BIA did. Ramirez-Durazo, 794 F.2d at 501 ("However, the petitioners have articulated no prejudice that resulted from this omission. The BIA considered the merits of the case and fully reviewed the record."). Thus, Aliyan did not forfeit any relief as a result of the ineffective assistance.
 
 CONCLUSION
 
 28
 For the foregoing reasons, we deny the petition for review. The BIA did not abuse its discretion by affirming the denial of Aliyan's motion to reopen. Aliyan was not entitled to such relief because he failed to establish prima facie eligibility for the underlying relief. Furthermore, Aliyan's due process claim was disposed of by the prima facie eligibility findings.
 
 
 29
 PETITION DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 241(a)(2), 8 U.S.C. Sec. 1251(a)(2), has been since recodified as section 241(a)(1)(B), 8 U.S.C. Sec. 1251(a)(1)(B). Old section 241(a)(2) provided in part, "Any alien in the United States ... shall, upon the order of the Attorney General, be deported who ... is in the United States in violation of this Act or in violation of any other law of the United States." 8 U.S.C. Sec. 1251(a)(2)
 
 
 [2]
 Section 208(a) provides, "The Attorney General shall establish a procedure for an alien physically present in the United States ... to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 101(a)(42)(A) [8 USCS Sec. 1101(a)(42)(A) ]." 8 U.S.C. Sec. 1158(a)
 Section 101(a)(42)(A) provides, "The term 'refugee' means any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. Sec. 1101(a)(42)(A).
 
 
 [3]
 Section 243(h) provides in part, "The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1253(h)
 
 
 [4]
 Suspension of deportation relief is set forth in section 244 of the Act, 8 U.S.C. Sec. 1254. Section 244 provides that the Attorney General in his discretion may suspend deportation and adjust the status of an otherwise deportable alien who (1) has been physically present in the United States for not less than seven years; (2) is a person of good moral character; and (3) is a "person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse." 8 U.S.C. Sec. 1254