107 F.3d 877
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sun Hee HAN; Jae Mun Han; Nam Sup Han; Jae Kyung Han, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70786.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 12, 1996.
Decided Feb. 27, 1997.
 
 Before: HUG, Chief Judge, SCHROEDER and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Nam Sup Han, his wife Sun Hee Han and their two children, natives and citizens of the Republic of Korea ("South Korea"), petition for review of the decision of the Board of Immigration Appeals ("BIA") denying their motion to reopen deportation proceedings based on Mr. Han's application for asylum and withholding of deportation under 8 U.S.C. §§ 1158(a) & 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition.
 
 
 3
 The Han family entered the United States as temporary visitors in 1987. In 1988, Ms. Han applied for a change in visa status to an "E-2" treaty investor pursuant to 8 U.S.C. § 1101(a)(15)(E)(ii). The application was denied, and Ms. Han unsuccessfully appealed to this court. In March of 1992, petitioners filed a motion to reopen with the BIA in order to allow Mr. Han to apply for asylum and withholding of deportation.[1]
 
 
 4
 In support of the application, Mr. Han submitted a sworn affidavit and numerous documents relating to his membership in the South Korean government's security forces during the early 1980's under President Doo Hwan Chun. Chun took over after the assassination of President Jeong Hee Park in 1979.
 
 
 5
 In the period following the assassination, Chun declared martial law. Han, a Chun loyalist and a military officer working in the government's security apparatus, "organized a plan to take corrupt politicians in the National Assembly out of power." Pursuant to this plan, approximately 100 members of the National Assembly and 80 generals were arrested, including many prominent members of the opposition.
 
 
 6
 Following these arrests, students and political activists took to the streets to protest. In response, the government set up the Samcheong Educational Institute ("Institute"). The Institute provided locations to detain, interrogate, and "re-educate" those believed to be opposed to the government. Although Han's role in planning and running the Institute is not entirely clear, documents submitted by him indicate that he was closely associated with the Institute and was a "key figure." The documents also outline numerous allegations of human rights abuses by government security forces during the Chun regime. In particular, they indicate that many Koreans died or were injured while detained at the Institute. Han, however, denies personal responsibility, stating that "[u]nfortunately, [those incidents were] due to forces beyond my control." Despite these denials, the documents submitted by Han demonstrate that (1) Han was intimately involved in the Institute, (2) some, if not most, of the individuals were sent to the Institute because of their political opinions, and (3) many detainees at the Institute suffered persecution.
 
 
 7
 In 1983, Han was assaulted and injured by "political dissenters," and, as a result of these injuries, Han was forced to retire from the military. In recognition of Han's long service, the government placed him in charge of Arim Construction Company. Han lived and worked unmolested in South Korea until August of 1987 when his military past and connection with the Institute were discovered. Angry protesters, some of whom were apparently former detainees at the Institute, rioted at Arim, ransacking the office and setting fire to the building. Han was forced to hurl himself out of a third floor window in order to escape, permanently injuring himself. Han and his family left South Korea shortly thereafter.
 
 
 8
 In 1988, Chun resigned and President Roh Tae Woo assumed office. Subsequently, Roh and the National Assembly conducted investigations of the human rights abuses of the Chun era, including abuses at the Institute. As a result, arrest warrants apparently were issued for Han and eight other officials connected with the Institute for their actions during the Chun era. Han and another official had left South Korea by this time and thus were not brought to trial. Of the remaining seven officials, five were convicted, one was acquitted, and one died during the course of the investigation. In addition, Kim Young Sam, a member of the opposition whom Han had arrested, is now president of South Korea.
 
 
 9
 The BIA reviewed Han's application and supporting materials and determined that Han was statutorily ineligible for "refugee" status because he had "ordered, incited, assisted, or otherwise participated in the persecution of [others] on account of ... [their] political opinion." Thus, the BIA concluded that Han's motion to reopen failed to establish prima facie eligibility for asylum. The Hans timely petition for review.
 
 
 10
 The BIA may deny a motion to reopen on at least three grounds: (1) failure to establish a prima facie case for the relief sought; (2) failure to introduce previously unavailable material evidence; or (3) a determination that even if the alien were eligible for relief, the alien would not merit a discretionary grant of relief. See INS v. Doherty, 502 U.S. 314, 323 (1992) (citing INS v. Abudu, 485 U.S. 94, 104-105 (1988)). Here the denial was based upon the failure to establish a prima facie case.
 
 
 11
 To determine whether the alien has established a prima facie case, the BIA must examine the alien's "evidence in its entirety." See Limsico, 951 F.2d 210, 213 (9th Cir.1991). Moreover, the BIA must accept as true facts stated in the alien's "affidavits unless they are inherently unbelievable." Id.
 
 
 12
 The Attorney General has discretion to grant asylum to an alien if the alien is determined to be a "refugee." See 8 U.S.C. § 1158(a). "The burden of proof is on the applicant for asylum to establish that he [or she] is a refugee." 8 C.F.R. § 208.13(a); Rebollo-Jovel v. INS, 794 F.2d 441, 448 (9th Cir.1986) ("alien bears the burden of proof in both asylum and withholding of deportation cases"). A "refugee" is defined as a person who is unable or unwilling to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); Prasad v. INS, 83 F.3d 315, 318 (9th Cir.1996); see also Rodriguez-Rivera v. INS, 848 F.2d 998, 1005 (9th Cir.1988) (alien's fear of criminal prosecution does not generally constitute a well-founded fear of persecution); Mabugat v. INS, 937 F.2d 426, 429 (9th Cir.1991). The definition of "refugee," however, "does not include any person who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of ... political opinion." 8 U.S.C. § 1101(a)(42)(B); see also 8 U.S.C. § 1253(h) (same rule for eligibility for withholding of deportation).
 
 
 13
 Here, Han's affidavit and accompanying materials support the BIA's determination that Han was statutorily ineligible for asylum or withholding of deportation based on his participation in the persecution of other Koreans during the Chun regime. See 8 U.S.C. § 1101(a)(42)(A); see also 8 U.S.C. § 1253(h). Given these circumstances, the BIA's denial of the motion to reopen based on Han's failure to establish prima facie eligibility for asylum was correct.[2]
 
 
 14
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Ms. Han and her two children sought derivative asylum and withholding of deportation based on Mr. Han's application. See 8 U.S.C. § 1158(c)
 
 
 [2]
 Because Ms. Han's and her children's asylum status was derivative of Mr. Han's asylum application, the BIA's finding that Mr. Han was statutorily ineligible also is determinative of their claims