**Sorachai SIDA and Nongyoa P. Sida, Petitioners,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 84–7630.

United States Court of Appeals, Ninth Circuit.

Submitted April 2, 1985.[*]

Decided July 2, 1985.

M. Rito Corrales, Santa Ana, Cal., for petitioners.

Robert C. Bonner, Frederick M. Brosio, Jr., Carolyn M. Reynolds, Los Angeles, Cal., for respondent.

Before PREGERSON and REINHARDT, Circuit Judges, and HARDY, District Judge.[**]

PREGERSON, Circuit Judge.

This matter is before us for the third time.

Petitioners, Mr. Sorachai Sida and Mrs. Nongyao P. Sida, now appeal the July 1984 decision of the Board of Immigration Appeals (BIA) denying their motion to reopen deportation proceedings to apply for suspension of deportation. The motion was denied on the ground that the Sidas failed to satisfy the seven years continuous presence requirement of 8 U.S.C. § 1254(a)(1) (1982) for suspension of deportation.[1]

The Sidas, citizens of Thailand, first entered the United States in 1969. They returned to Thailand in 1972 to get married. They remained there from August 14 to September 13. This visit broke the continuity of their physical presence in the United States. Mr. Sida departed from the

---

[*] The panel unanimously finds this case suitable for decision without oral argument. Fed.R. App.P. 34(a) and Ninth Circuit Rule 3(f).

[**] Honorable Charles L. Hardy, United States District Judge, District of Arizona, sitting by designation.

1. Section 1254(a)(1) permits suspension of deportation if the alien demonstrates (1) seven years continuous physical presence in the United States; (2) good moral character during that time; and (3) extreme hardship "to the alien or his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

United States on one other occasion. His latest entry into the United States was on September 19, 1976. Mrs. Sida's latest entry was on September 13, 1972.

The Immigration and Naturalization Service (INS) instituted deportation proceedings in August 1977. The Sidas were found deportable and were then granted voluntary departure. Thereafter, the Sidas moved twice to reopen the deportation proceedings to apply for suspension of deportation. The Immigration Judge (IJ) found that they had not fulfilled section 1254(a)(1)'s seven year continuous physical presence requirement. The denial of the motion to reopen was appealed to the BIA. The BIA dismissed this appeal in July 1980. The Sidas petitioned this court to review the BIA's 1980 dismissal. We then remanded and required that the BIA address and rule on the new evidence the Sidas presented in their motions to reopen.[2] *Sida v. INS*, 665 F.2d 851 (9th Cir.1981).

On June 30, 1982, the BIA again dismissed the Sidas' appeal on the ground that little likelihood existed that their application for suspension of deportation would be granted at reopened proceedings. The BIA again failed to consider the Sidas' new evidence.

On January 17, 1984, the Sidas appealed to this court for the second time. On February 15, 1984, 732 F.2d 164, we again remanded and instructed the BIA to determine whether *INS v. Phinpathya*, 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984), controls the disposition of the pending application. In *Phinpathya*, the Supreme Court held that section 244(a)(1) of the Immigration & Nationality Act must be read literally with regard to the requirement of seven years continuous physical presence. *Id.* 104 S.Ct. at 589.

On July 9, 1984, the BIA again dismissed the Sidas' appeal holding that in view of *Phinpathya* the motion before the BIA failed to establish that the Sidas had the requisite seven years of continuous physical presence at the time of filing their motion to reopen on February 28, 1979.

The BIA did not reach the issue of extreme hardship. On December 17, 1984, the Sidas filed the instant appeal from the BIA's September 7, 1984 deportation order.

The Sidas now contend that following their latest entries into the United States—counting the time accrued on appeal—they can satisfy the minimum required period of seven years continuous physical presence. They ask that we remand the matter to the BIA to reconsider the issue of their continuous physical presence and to consider the issue of extreme hardship in light of current circumstances.

*Alvarez-Ruiz v. INS*, 749 F.2d 1314 (9th Cir.1984), a recent Ninth Circuit decision parallels the Sidas' case. In *Alvarez-Ruiz*, the alien entered the United States from Mexico in March 1974 without inspection. He travelled to Mexico in November 1975 to get married. He returned to the United States in May 1976. The INS instituted deportation proceedings in 1981. The IJ refused to suspend deportation because the alien's six month absence broke the continuity of the seven year physical presence requirement. The BIA affirmed. We ruled that the proper procedure was for the alien to file a new motion to reopen with the BIA to resolve the question whether Alvarez-Ruiz had been continuously present in the United States since his return in 1976. We directed the BIA to count the time accrued on appeal. 749 F.2d at 1315.

The Supreme Court's opinion in *INS v. Rios-Pineda*, —— U.S. ——, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985), suggests that, under certain circumstances, time accrued on appeal can count toward establishing the seven years continuous physical presence requirement.

*Rios-Pineda* held that the BIA did not abuse its discretion by denying reopening of deportation proceedings where six of the seven years of continuous physical presence in the United States accrued "by virtue of [the aliens'] baseless appeals." *Id.,* —— U.S. at ——, 105 S.Ct. at 2103. "No

---

**2.** The new evidence was a doctor's letter stating that the Sidas' child had a severe respiratory

condition and therefore should not return to Thailand.

substance was found in any of the points raised on appeal, in and of themselves, and we agree with the BIA that they were without merit." *Id.*, —— U.S. at ——, 105 S.Ct. at 2102. In our view, the Sidas' appeals have not been baseless, therefore, we perceive no impediment to counting the time accrued during the pendency of their appeals.[3]

Moreover, on the issue of time accrued on appeal, this case should not be confused with another recent Ninth Circuit decision, *Avila-Murrieta v. INS*, 762 F.2d 733 (9th Cir.1985), which deals with section 212(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(c) (1982). *Avila-Murrieta* does not apply to the disposition of the Sidas' case, which deals with section 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1).

*Avila-Murrieta* addressed one narrow question: "whether the time awaiting discretionary relief [from an order of deportation] *under section 212(c)* should also accrue toward *that section's* seven year requirement when the merits of deportation are not challenged." Slip op. at 5 (emphasis added).

Section 212(c) applies to aliens who, unlike the Sidas, were lawfully admitted for permanent residence. *Avila-Murrieta* determines when that lawful permanent residence terminates.

To be eligible for section 212(c) relief, an alien must have maintained a "lawful unrelinquished domicile of seven consecutive years...." 8 U.S.C. § 1182(c). In discussing the history of section 212(c), a Senate Report stated that

the proviso was intended to give discretionary power to the proper Government official to grant relief to aliens who were reentering the United States after temporary absence, who came in the front door, were inspected, lawfully admitted, established homes here, and remained

for 7 years *before they got into trouble* [for committing a crime]. *Marti-Xiques v. INS*, 741 F.2d 350, 352–53 (11th Cir.1984) (quoting *The Immigration and Naturalization Systems of the United States*, S.Rep. 1515, 81st Cong.2d Sess. 382 (1950)) (emphasis in original).

In contrast with section 212(c), section 244(a)(1), the section we are presently concerned with, does not relate to aliens who are "in trouble" for committing a criminal act. *See* 8 U.S.C. §§ 1251(a)(3) (1982). In short, section 212(c) is inapplicable to the Sidas' case.

The factual determination whether the Sidas have been continuously physically present in the United States for the seven years required under section 244(a)(1) is for the BIA to determine in the first instance. *Phinpathya*, 104 S.Ct. at 588 n. 6. The appropriate procedure would be for the Sidas to " 'follow the INS regulations and file a motion to reopen with the BIA.' " *Alvarez-Ruiz v. INS*, 749 F.2d 1314, 1316 (quoting *Ramirez-Gonzalez v. INS*, 695 F.2d 1208, 1214 (9th Cir.1983)).

If, following the motion to reopen, the Board finds that the Sidas now meet the seven year physical presence test, the BIA should then consider their claim of extreme hardship. This claim should be examined in light of current circumstances. *See Chookhae v. INS*, 756 F.2d 1350 (9th Cir.1985) (per curiam).

To avoid unduly interfering with the BIA's discretion and to enable petitioners to seek relief from the BIA, we stay our mandate for sixty days. If a motion to reopen and application for stay are filed with the BIA or District Director within this period, we stay our mandate for such further time as is required for disposition of the application for stay by the BIA or District Director. *See* 8 C.F.R. § 3.6(b) (1985); *Alvarez-Ruiz v. INS*, 749 F.2d at 1316.

---

**3.** Attached to the February 26, 1979 motion to reopen was previously submitted documentation plus a letter from the Sidas' doctor stating: "This child is suffering from recurrent tonsillitis and pulmonary congestion and fever by history. This child historically becomes very ill in Thailand. He shouldn't return to Thailand." Mrs. Sida stated that this respiratory condition was "recently discovered" when the child traveled to Thailand to visit his grandparents. Thus, Mrs. Sida did submit new evidence justifying her motion to reopen and, in the absence of contrary findings, we cannot say that this evidence is baseless.

REVERSED AND REMANDED for further proceedings consistent with the views expressed in this opinion.