15 F.3d 1088
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Stoyan POPOV, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-70437.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 10, 1993.*
Decided Jan. 11, 1994.
 
 1
 Before: FLETCHER, PREGERSON and RYMER, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner Stoyan Popov petitions for review of the Board of Immigration Appeals' (BIA's) denial of asylum. We affirm, but stay the mandate for ninety (90) days to allow Popov to petition for reopening before the BIA.
 
 
 4
 Popov is a native and a citizen of Bulgaria. On January 4, 1990, he entered the United States, from Canada, at Buffalo, New York. He was apprehended by an officer and detained by immigration authorities. The government initiated deportation proceedings by issuing an Order to Show Cause. After four days, Popov was released. He travelled to Los Angeles, where his deportation hearing began on August 8, 1991.
 
 
 5
 Popov appeared before an immigration judge, without an attorney. An interpreter assisted him. The immigration judge (IJ) told Popov that he had the right to be represented by counsel. The IJ then gave Popov a list of legal services in the Los Angeles area, and told him that the hearing could be continued to allow him to get a lawyer, and that sometimes lawyers on the list provided free legal services. Popov replied that he would represent himself for the time being, since he did not have money for a lawyer.
 
 
 6
 The government had initially charged Popov with entering the United States without inspection in violation of Sec. 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1251(a)(2). Later in the proceedings, the government lodged a substituted charge of entry without proper documents, which subjects an alien to exclusion under 8 U.S.C. Sec. 1182(a)(7)(A)(i)(I), and hence to deportation under 8 U.S.C. Sec. 1251(a)(1)(A).
 
 
 7
 On the basis of Popov's admission that he "did not have permission" to reside in the United States, the IJ found that Popov was subject to deportation. Popov then stated that if he returned to Bulgaria, he would be imprisoned. He submitted an application for asylum, and the IJ set a date for an asylum hearing.
 
 
 8
 Before the hearing, the IJ received a letter opinion from the State Department Bureau of Human Rights and Humanitarian Affairs (BHRHA). The opinion was based on Popov's written asylum application, in which Popov stated that he feared he would be jailed if he returned to Bulgaria; that he had been jailed for one year for his political views; and that his father had been jailed for political reasons and his grandfather killed by communist police. The BHRHA opinion, after concluding that Popov's application was "skeletal and uninformative," emphasized the change of regime in Bulgaria. BHRHA letter opinion, dated September 19, 1991, at 1. The BHRHA pointed out that the hard-line Communist government had been ousted in November 1989; that the country had embarked on a course of liberalization and had made "remarkable strides" in observing human rights; that there was now freedom of speech, press, assembly, travel, and worship; and that former dissidents had returned to the country and many had assumed positions of power, including the presidency. Id.
 
 
 9
 At his asylum hearing, Popov first offered the testimony of Georgy Ivanof Detchen. Detchen stated that he had met Popov in Bulgaria in 1984, at a place called "the Center," where a group of persons to which they both belonged spoke out against the government. In response to this activity, Detchen testified, the government denounced them as traitors, and threatened to throw them in jail.
 
 
 10
 Popov then testified that in 1983, he was made to work in Siberia for one year, under "heavy conditions," and "without normal compensation." Popov did not explicitly state, although he did suggest, that he was sent to Siberia because of his political views. In response to a question from government counsel, he said that he had been picked to go to Siberia by the militia, that the militia chose people they disliked, and that at the time he was sent, he was already active at the Center.[1]
 
 
 11
 Popov also testified that in 1985 he was imprisoned for a year for attempting to leave the country without permission. While in prison, he drew a pro-American tattoo on his arm; after he was released, he was harassed and detained by the militia because they were irritated by his tattoo. He was put into cells by the militia five or six times; the longest detention appears to have been 10 days. Popov also testified that he would be harmed by the militia if he returned to Bulgaria, and that persons had been pressing his relatives for information as to his whereabouts.
 
 
 12
 In response to the IJ's inquiries about the change of regime in Bulgaria, which occurred after Popov's latest difficulties with the militia and very shortly before he left the country, Popov replied that even after the change, the same neighborhood supervisors and chiefs were in charge, and that his mother had told him that they were still looking for him.
 
 
 13
 The IJ denied Popov's application for asylum, finding that Popov had been persecuted for his political opinions, but that the regime had changed, and that the fact that neighborhood authorities were inquiring about Popov did not indicate that they were planning to persecute him if he returned.
 
 
 14
 Popov appealed the IJ's decision to the Board of Immigration Appeals, reiterating his history of friction with Bulgarian authorities, and stating that he feared for his life if he were to return. The BIA affirmed the denial of asylum. The Board agreed that Popov had been harassed because of his political views, although it noted that his one-year imprisonment was the result of his attempt to leave the country illegally. The BIA did not allude to Popov's year in Siberia, stating only that "respondent was subjected to harassment and short durations of imprisonment due to his outspoken praise of the United States." The BIA agreed with the IJ that Popov did not have a well-founded fear of persecution. The Board also found that Popov had not shown, under Matter of Chen, Int.Dec. # 3104 (BIA 1989), past persecution of such severity that asylum was warranted, for humanitarian reasons, on that basis alone. The BIA granted Popov 30 days in which to depart voluntarily.
 
 
 15
 Popov timely appealed the BIA's order to this court, which has jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a). Attached to his opening brief are materials which his attorney states were unavailable until after the administrative proceedings were over. These materials include a letter from Popov's mother, stating that a "gentleman," whose name she dares not write, has told her that "they" are still in power, and has threatened Popov's life should he return. Also included are two "Invitations" from the Ministry of Internal Affairs, directing Popov to appear at a Local Court with his passport.
 
 DISCUSSION
 1. Deportability
 
 16
 Popov argues, citing Woodby v. INS, 385 U.S. 276 (1966), that the government had the burden of proving deportability by clear and convincing evidence, and that it failed to carry this burden because it produced no evidence at all about his manner of entry. Popov also suggests that the IJ improperly shifted the burden of proof at the deportation hearing, questioning him about his mode of entry in an attempt to gain an admission. In response, the government argues that it has satisfied its burden because Popov admitted to the charge against him.
 
 
 17
 We are without jurisdiction to consider Popov's attack on the IJ's deportation order, because Popov did not appeal that decision to the BIA: his notice of appeal to the Board is devoted entirely to his asylum claim. This court has stated that its review does not extend to arguments which were not made to the BIA but merely should have been. Martinez-Zalaya v. INS, 841 F.2d 294, 296 (9th Cir.1988) (upholding BIA's summary dismissal of appeal where arguments were not presented to BIA). Instead, the court's review is "confined to the BIA's decision and the bases upon which the BIA relied." Id.; see also Acewicz v. INS, 984 F.2d 1056, 1059 (9th Cir.1993). Because Popov did not give the BIA an opportunity to rule on the deportability issue, we may not reach that issue either.
 
 2. Asylum--Past Persecution
 
 18
 To be eligible for asylum under 8 U.S.C. Sec. 1158(a), an applicant must show that he is a refugee within the meaning of 8 U.S.C. Sec. 1101(a)(42)(A). Castillo v. INS, 951 F.2d 1117, 1121 (9th Cir.1991). This latter statutory section defines a refugee as a person unable to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." The applicant may show that he or she is a refugee based on past persecution alone. Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988); Matter of Chen, Int.Dec. # 3104 (BIA 1989); see also Berroteran-Melendez v. INS, 955 F.2d 1251 (9th Cir.1992).
 
 
 19
 We review the BIA's factual determination that an applicant has failed to show a well-founded fear of persecution for substantial evidence. Berroteran, 955 F.2d at 1255. After an applicant has shown that he or she is a refugee and hence is eligible for asylum, the Attorney General decides whether or not to grant that relief. Id.; Castillo, 951 F.2d at 1121. We review this latter decision for abuse of discretion. Berroteran at 1255. With respect to past persecution, the same two-step administrative procedure and two-level standard of review applies. Desir, 840 F.2d at 730, n. 10.[2]
 
 
 20
 The initial focus in Popov's case was on whether or not he could establish a well-founded fear of persecution, and the IJ's opinion is largely devoted to that question. The BIA, by contrast, concluded that Popov had neither shown a well-founded fear of persecution, nor established that his past persecution had been "so extreme as to warrant for humanitarian reasons a grant of asylum as a matter of discretion." BIA Order at 2. On appeal, Popov directly challenges only the latter conclusion.[3]
 
 
 21
 The seminal case on past persecution is the BIA's Matter of Chen, Int.Dec. # 3104. In Chen, the Board squarely held--as this court had held one year earlier, in Desir--that an applicant may establish his eligibility for asylum by a showing of past persecution. The Board first explained that in many cases, even where past persecution has been shown, the fear of future persecution is still relevant as a factor which would point in the direction of a favorable exercise of discretion. The Board then went on to hold that "there may be some cases where the favorable exercise of discretion is warranted for humanitarian reasons even if there is little likelihood of future persecution." Chen at 5 (emphasis added).
 
 
 22
 The facts of this case do not rise to the level of those in Chen, where the applicant's father was tortured for his religious beliefs, and the applicant was tortured as a child, ostracized thereafter, and as a result rendered suicidal in adulthood. While the facts of Chen need not be understood as establishing a threshold, asylum based on past persecution is warranted only when that persecution is such that it would be inhumane to force the applicant to his or her native country. See Acewicz v. INS, 984 F.2d at 1062 (9th Cir.1993). The BIA was not compelled to reach that conclusion in this case.
 
 
 23
 But because the facts which gave rise to Popov's past persecution claim will be relevant if Popov files a motion to reopen,[4] see infra, we are constrained to point out several deficiencies in the BIA's treatment of that claim. The Board stated simply that
 
 
 24
 our review of the record reveals that even though the respondent was placed in detention on a number of occasions for a few days at a time, such actions by Bulgarian authorities, while perhaps considered persecutory in nature, were not so extreme as to warrant for humanitarian reasons a grant of asylum as a matter of discretion.
 
 
 25
 BIA Order at 2. In limiting its consideration to these short detentions, the Board entirely neglected Popov's year in Siberia, which Popov's testimony at least suggested was tied to his expression of political views, and discounted Popov's year-long imprisonment for attempting to leave the country.
 
 
 26
 The Board provided no explanation for its failure to mention the first fact, and its reason for discounting the second is highly questionable: the Board stated that Popov was imprisoned for the punishable offense of trying to leave the country without authorization. If the Board was assuming that legal punishment can never be persecutory, then it was wrong. Punishment pursuant to persecutory laws is persecution, and in considering whether or not conditions in a given country are persecutory, this circuit considers, among other factors, that country's laws. See Hernandez-Ortiz, 777 F.2d at 513. A law which punishes those who try to leave can be persecutory in precisely the way which is recognized by this country's asylum laws: attempting to leave a country with whose leaders one disagrees may under certain circumstances be the manifestation of a political opinion.
 
 
 27
 We therefore direct the BIA, in determining whether or not to reopen proceedings, and in evaluating elements of both past and future persecution if it does reopen, to consider all of the relevant evidence in the record.
 
 
 28
 3. Asylum--New Evidence of Future Persecution
 
 
 29
 Popov argues that this court should remand his case so that the BIA may consider evidence not available to him when his case originally came before it--namely, the letter from his mother warning about the danger of returning, and the summons from the local court. He relies on 28 U.S.C. Sec. 2347(c), which allows an appellate court to remand a case to an agency if a party submits additional evidence which is material, and which the party had reasonable grounds for failing to present to the agency originally. In Ramirez-Gonzalez v. INS, 695 F.2d 1208, 1213 (9th Cir.1983), however, this court declined to apply Sec. 2347(c) where an asylum applicant presented new evidence on appeal: the court reasoned that the INS regulations provide for reopening deportation hearings; that under INS v. Wang, 450 U.S. 139 (1981), reh'g denied, 451 U.S. 964 (1981), a court should generally not compel the INS to reopen proceedings; and that remanding under Sec. 2347(c) would amount to an order to reopen. Accordingly, the court held that Sec. 2347(c) was inapplicable, and that the correct procedure was for the applicant to file a motion to reopen with the BIA. 695 F.2d at 1213-14.[5]
 
 
 30
 Section 2347(c) is more liberally applied in immigration cases outside of this circuit. Popov cites Bernal-Garcia v. INS, 852 F.2d 144, 146-47 (5th Cir.1988), in which the Fifth Circuit applied Sec. 2347(c) and remanded a case to the BIA, and Dolores v. INS, 772 F.2d 223, 224-25 (6th Cir.1985), in which the Sixth Circuit held that Sec. 2347 is available to asylum applicants.[6] In addition, the Tenth Circuit has concluded that Ramirez-Gonzalez represents "the minority view regarding Sec. 2347," and has stated that it will follow the Third, Fifth, and Sixth Circuits in applying the statute to deportation cases. Becerra-Jimenez v. INS, 829 F.2d 996, 1001 (10th Cir.1987).
 
 
 31
 In this circuit, however, Ramirez-Gonzalez remains the rule. Olivar v. INS, 967 F.2d 1381, 1382 (9th Cir.1992) ("when an alien discovers new information after the BIA has finalized deportation proceedings, the proper procedure is for the alien to move the BIA to reopen proceedings"); Roque-Carranza v. INS, 778 F.2d 1373, 1374 (9th Cir.1985) ("we will not supersede th[e] ordinary reopening procedure by compelling the BIA to reopen the hearing"). Popov's request that his case be remanded to the BIA is therefore denied.
 
 4. Right to Counsel
 
 32
 Popov argues that he was deprived of due process because the government did not provide him with an attorney at his asylum hearing. He argues that he did not understand the nature of the hearing, and was prevented from adequately developing his asylum claim and from cross-examining the BHRHA letter which was used against him. He asks that his case be remanded for this reason, although he states that now that he has been able to get an attorney, it will not be necessary for the government to provide him with one.
 
 
 33
 Popov's claim that the government had an obligation to provide him with counsel fails. It is well established that although an alien has a right to counsel in deportation proceedings, the government has no duty to provide one. 8 U.S.C. Sec. 1362; United States v. Gasca-Kraft, 522 F.2d 149, 152 (9th Cir.1975); see also Baires v. INS, 856 F.2d 89, 91 (9th Cir.1989). The IJ in this case did everything required: he advised Popov of his right to counsel, provided him with a list of legal services in the area, and twice ordered a continuance so that Popov could seek advice from an attorney. When Popov told him that he could not afford an attorney because he had no money and no job, the IJ referred him to the department in the INS which handled work authorization.
 
 
 34
 Popov has also cited to Magallanes-Damian v. INS, 783 F.2d 931 (9th Cir.1986), in which this court, while reiterating that aliens have no Sixth Amendment right to counsel in deportation proceedings, nevertheless indicated that the INS might be compelled to reopen those proceedings if the alien had been represented by counsel whose assistance was so ineffective that it impinged on the fundamental fairness of the hearing, in violation of the Fifth Amendment due process clause. 783 F.2d at 933. It may seem that if relief is available to those whose attorneys are so ineffective that fairness is jeopardized, then it should also be available to those who are unable to get any attorney at all, and whose own inabilities may compromise the fairness of the proceeding. If that were the rule, however, then the government effectively would be obliged to supply counsel to those who could not afford it and who had few skills of their own.[7] Since that result is not consistent with either the law of this circuit or the controlling statute, the analogy between ineffective assistance of counsel cases and cases in which the alien has no counsel at all is inapposite.[8]
 
 CONCLUSION
 
 35
 We affirm the ruling of the BIA, but stay our mandate for ninety days for the limited purpose of allowing Popov to file a motion to reopen. Sida v. INS, 783 F.2d 947, 951 (9th Cir.1984). In ruling on the motion to reopen, the BIA is to be guided by the observations set forth in Section 2 of this Memorandum Disposition.
 
 
 36
 AFFIRMED. Mandate stayed.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Earlier, however, Popov had ascribed the militia's hostility toward him primarily to his pro-American tattoo, which he did not yet have at the time he was sent to Siberia. Popov also stated that he was sent to Siberia at the instigation of the neighborhood supervisor, one Harizonof, and explained that
 He called me and he said to me if you do not turn in your documents--you see, at that time they were gathering people to go to Siberia to work--I would throw you in jail. You have to go and work there at any price. I went and worked there for a year.... And I got back after one year had expired. I did not stay for the two years.
 Transcript of Hearing before Immigration Judge (November 15, 1991) at 37. It is not clear whether or not Harizonof's threats were made in response to Popov's political views.
 
 
 [2]
 In addition to Popov's application for asylum, both the IJ and the BIA addressed withholding of deportation. Deportation is to be withheld under 8 U.S.C. Sec. 1253(h) if the applicant demonstrates a "clear probability" that his life will be threatened if he is returned to his country. DeValle v. INS, 901 F.2d 787, 790 (9th Cir.1990). This is a higher standard than the "well-founded fear" of persecution. Hernandez-Ortiz v. INS, 777 F.2d 509, 513 (9th Cir.1985) (citing INS v. Stevic, 467 U.S. 407 (1984))
 Popov does not press his withholding of deportation claim on appeal. His appeal is based on past persecution, and he cites no authority indicating that deportation may be withheld on that basis. We therefore do not address withholding of deportation.
 
 
 [3]
 Popov appears to challenge the former conclusion indirectly, insofar as the new evidence which forms the basis of his request for remand, discussed infra, is probative primarily on the issue of future persecution. He does not argue, however, that this court should reverse the BIA's ruling that he did not have a well-founded fear of persecution on the basis of the evidence which was before the BIA
 
 
 [4]
 Chen indicated that there is a continuum between claims based on past persecution and claims based on a well-founded fear of future persecution. Apart from the very extreme cases such as Chen's own, Chen also discussed a different kind of past persecution case--one in which an applicant makes a lesser showing of past persecution, and "the likelihood of present or future persecution then becomes relevant as to the exercise of discretion." Chen at 4. Thus if Popov is successful in reopening proceedings based on new evidence of future persecution, the Board must consider that new evidence together with evidence of past persecution in determining whether or not Popov should be granted asylum
 
 
 [5]
 The Ramirez-Gonzalez court stated that Sec. 2347(c) was inapplicable "given the circumstances of this case." 695 F.2d at 1213. Its reasoning, however, appears to apply to all deportation cases in which an applicant receives new evidence after the Board's final ruling on his or her case
 
 
 [6]
 Popov also cites two Ninth Circuit cases in support of his contention that remand is the appropriate procedure here. In Sida v. INS, 783 F.2d 947 (9th Cir.1986), however, the court stated that the proper course was for the applicants to file a motion to reopen. 783 F.2d at 950 (citing Ramirez-Gonzalez ). And in Shahla v. INS, 749 F.2d 561, 564 (9th Cir.1984), the court suggested that the petitioner "reapply to the District Director for reinstatement of status."
 
 
 [7]
 While this may not precisely pertain to Popov's case, since he now has a lawyer, the same would not be true for all applicants who argued on appeal that the administrative proceedings were fundamentally unfair because they did not have counsel there
 
 
 [8]
 This difference between the two kinds of cases is less troubling if it is assumed that the IJ takes some steps to develop the record in the way in which the applicant's counsel otherwise would have--as the IJ did in this case