**Hurn Bu ROE, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**No. 84–7461.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1985.

Decided Sept. 20, 1985.

Gary Manulkin, William B. Bennett, Manulkin & Glaser, Los Angeles, Cal., for petitioner.

Ian Fan, Asst. U.S. Atty., Los Angeles, Cal., for respondent.

Before WALLACE, TANG and WIGGINS, Circuit Judges.

## OPINION

WIGGINS, Circuit Judge:

Hurn Bu Roe invokes our jurisdiction under 8 U.S.C. § 1105a(a) to review a decision of the Board of Immigration Appeals (BIA). The BIA found him deportable for failure to fulfill his marital agreement and as an alien who was excludable at the time of entry for lack of a valid labor certification and a valid visa. The BIA also denied Roe's application for suspension of deportation. We affirm.

## BACKGROUND

Hurn Bu Roe is a native and citizen of South Korea who entered the United States in April 1971 as the spouse of a fifth preference immigrant, Yong Cha Kang. Shortly before his entry into the United States, Roe divorced his first wife Sook Hee Song and married Yong. Within a few weeks after his entry into the United States, Roe divorced Yong. Roe returned to Korea and reentered the United States in October 1971 along with his first wife and their child. In December 1971, Roe remarried his first wife. In March 1972, Roe filed a second preference visa petition on behalf of his first wife.

On August 23, 1974, the INS initiated deportation proceedings against Roe. He was charged as deportable under 8 U.S.C. § 1251(a)(2) and (c), for entry into the United States with an immigrant visa procured by fraud on the basis of a marriage which was judicially annulled or terminated within two years of entry. Subsequently, the INS amended its original charge. Roe was also charged as deportable under 8 U.S.C. § 1251(c)(2), for failure or refusal to fulfill his marital agreement with Yong, and under 8 U.S.C. § 1251(a)(1) as an alien who

was excludable at the time of entry for lack of a valid labor certification [8 U.S.C. § 1182(a)(14)] and for lack of a valid visa [8 U.S.C. § 1182(a)(20)]. Roe denied the allegations of a sham marriage but admitted that he entered the United States with the purpose of performing skilled or unskilled labor and lacked a valid labor certification at the time of his entry. Roe also applied for suspension of deportation under 8 U.S.C. § 1254(a)(1).

In January 1982, the IJ held that the INS met its burden of demonstrating that Roe failed to fulfill his marital agreement which he made solely for the purpose of procuring his entry as an immigrant—i.e. that Roe's marriage was a sham entered into soley for immigration purposes. Accordingly, the IJ found Roe deportable as charged under 8 U.S.C. §§ 1251(c)(2). The IJ also concluded that Roe was deportable as charged under 8 U.S.C. § 1251(a)(1) because he was excludable at the time of entry under 8 U.S.C. § 1182(a)(14) and (20). The IJ rejected Roe's application for suspension of deportation on the ground that Roe failed to establish extreme hardship.

On appeal, the BIA affirmed the IJ's decision. Roe timely filed the present petition for review.

## DISCUSSION

Roe contends that: (1) the BIA's finding of a sham marriage is not supported by substantial evidence; (2) the INS violated its own regulation and denied him due process by preventing him from rebutting adverse evidence and presenting evidence on his behalf; (3) he was inadequately represented by counsel at his deportation hearing; (4) the BIA abused its discretion in denying his request for suspension of deportation; and (5) the immigration judge violated 8 C.F.R. § 242.17 (1985) by failing to notify him of his alleged eligibility for relief from deportation under 8 U.S.C. § 1251(f). We address each contention in turn.

### 1. *Sham Marriage*

Roe contends that the BIA's determination that his marriage to Yong was a sham

is not supported by substantial evidence. We disagree.

We must sustain the BIA's finding of a sham marriage if it is supported by substantial and probative evidence. *Garcia-Jaramillo v. INS*, 604 F.2d 1236, 1238 (9th Cir.1979), *cert. denied*, 449 U.S. 828, 101 S.Ct. 94, 66 L.Ed.2d 32 (1980). Although a marriage may be legally valid under the laws of the country where the marriage took place, the INS is free to conduct an inquiry to determine whether the marriage was entered into for the purpose of circumventing the immigration laws. *Id.* "A marriage is a sham if the bride and groom did not intend to establish a life together at the time they were married." *Id.* (*quoting Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir.1975)).

Based on the record before us, we are satisfied that substantial evidence supports the determination that Roe's marriage to Yong was a sham. We agree with the IJ that the sequence of events demonstrates that Roe married Yong solely for the purpose of securing an immigrant visa for himself and eventually for his first wife and their child.

The record reveals that on December 30, 1966, Roe married Sook Hee Song. The following year Sook gave birth to their oldest daughter.

In 1970, Roe was introduced to Yong Cha Kang and met with her on several occasions. Shortly after Yong informed Roe that she would soon be immigrating to the United States as the beneficiary of a fifth preference visa, Roe proposed to Yong. Roe and Yong were married on December 7, 1970. That same day Roe divorced his first wife.

Yong testified that she learned of Roe's previous marriage only after submitting a visa petition on his behalf. Yong also testified that she and Roe did not live together in Korea or in the United States after their marriage.

Yong immigrated to the United States on December 19, 1970, as a permanent resident. She settled in Columbus, Georgia, to live with her sister and brother-in-law.

On the basis of his marriage to Yong, Roe was issued an "Immigrant Visa and Alien Registration" on March 16, 1971. Although, the visa indicated that Roe's final address in the United States was the home of Yong in Columbus, Georgia and that Roe's intended port of entry was Los Angeles, California, Roe entered the United States on April 3, 1971, through Honolulu, Hawaii. Upon his arrival in Honolulu, Roe was greeted by a long-time friend, Barney Kim, whom he had contacted prior to leaving Korea. Roe stayed with Mr. Kim and secured employment from him. Within a few days after his arrival, Roe obtained a business license in Hawaii.

After ascertaining that Yong had received his "green card," Roe flew to Georgia on a round-trip ticket. In Georgia, Roe did not stay with Yong; he registered at the YMCA for the duration of his sojourn.

Yong testified that she asked Roe to stay with her in Georgia but he refused. She also testified that Roe never sought employment in Georgia. After obtaining his green card from Yong, and before returning to Hawaii, Roe initiated divorce proceedings through the Korean Consulate's office in Houston, Texas. Roe's divorce from Yong was finalized on May 11, 1971.

Roe returned to Honolulu and on May 9, 1971, departed for Korea. He returned to the United States on October 9, 1971, again through Honolulu, Hawaii. Roe's first wife and his daughter also arrived in Honolulu that same day. Roe's first wife entered the United States as a non-immigrant student. Roe and his first family proceeded to settle in southern California where Roe and his first wife remarried on December 22, 1971. Although Roe testified that he found employment opportunities and good living conditions in Hawaii and for that reason did not want to live in Columbus with Yong, he relinquished these opportunities to settle in southern California with his first wife. As the BIA noted, "the resourcefulness with which [Roe] estab-

lished himself in California is notably missing with regard to his intentions and efforts to live with [Yong] in Columbus."

Roe and his defense witnesses disputed Yong's testimony. Roe claimed that he sought employment in Georgia but could not find any and that he wanted Yong to return to Hawaii with him where he had a job and could provide for their needs. Roe also testified that he divorced Yong because she would "not obey." Roe's defense witnesses claimed that Yong was aware of Roe's first marriage when she married him. The IJ found them not credible. The immigration judge is in a better position to assess the credibility of a witness than are we. *See Espinoza Ojeda v. INS,* 419 F.2d 183, 186 (9th Cir.1969). Because the IJ's credibility determinations are grounded upon reasonable, substantial and probative evidence, we will not disturb them. *Id.; Garcia-Jaramillo v. INS,* 604 F.2d at 1238.

Based on our review of the record as a whole, we conclude that the BIA's determination that Roe's marriage to Yong was a sham is amply supported by substantial evidence.

2. *Opportunity to Present Evidence*

■ Roe further contends that reversal is required on the grounds that the IJ violated 8 C.F.R. § 103.2(b)(2) (1985) by preventing him from rebutting adverse evidence and denied him due process by barring him from fully presenting his evidence regarding his marriage to Yong. We find no merit in this contention.

8 C.F.R. § 103.2(b)(2) addresses an alien's right to inspect evidence considered by the INS in ruling on petitions and applications. The section provides in relevant part:

An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as hereinafter provided. If the decision will be adverse to the applicant or petitioner on the basis of derogatory evidence considered by the Service and of which the applicant or petitioner is unaware, he [or she] shall be

advised thereof and offered an opportunity to rebut it and present evidence in his [or her] behalf before the decision is rendered, except that classified evidence shall not be made available to him [or her].

Assuming, without deciding, that section 103.2(b)(2) applies to deportation proceedings, the record does not bear out Roe's assertion that the IJ precluded him from rebutting derogatory evidence. Contrary to Roe's assertion, the IJ did not curtail Roe's testimony regarding his reasons for divorcing Yong. The record shows that the IJ simply attempted to clarify a question posed to Roe by the INS's counsel.

Moreover, the record reflects that Roe had ample opportunity to rebut adverse evidence and to present evidence on his behalf. Roe's deportation hearing was continued numerous times over a period of six years. In addition to his own testimony, Roe presented several witnesses who testified on his behalf about events subsequent to Roe's arrival in the United States. In these circumstances, we find no violation of 8 C.F.R. § 103.2(b)(2) or due process. We are satisfied that Roe was accorded a full and fair hearing. *See Nicholas v. INS,* 590 F.2d 802, 809 (9th Cir.1979) (constitutional due process requirement is satisfied by a full and fair hearing).

3. *Ineffective Assistance of Counsel*

■ Roe claims that he was denied effective assistance of counsel at his deportation hearing because his attorney failed to elicit critical information from Barney Kim and to cross-examine Roe's second wife at her deposition. Roe argues that these alleged errors amount to a denial of due process.

Roe's contention that his counsel failed to elicit Mr. Kim's "first hand knowledge" of the quarrels between Roe and Yong over the location of their future home is wholly without merit. Mr. Kim's testimony at the deportation hearing confirms his lack of knowledge regarding any disputes between Roe and Yong. Although Kim testified that he heard Roe ask Yong to join him in Hawaii, Kim also testified that he did not

know why Yong did not return with Roe to Honolulu. Moreover, Kim's testimony at the deportation hearing is consistent with an earlier statement prepared by Roe's attorney.

We also find no merit to Roe's contention that his counsel's failure to cross-examine Yong amounts to ineffective assistance of counsel. Roe's attorney elected to depose Yong rather than call her as a witness at the deportation hearing. This tactical decision not to cross-examine a witness before an IJ does not, without more, constitute ineffective assistance of counsel. *See Thorsteinsson v. INS*, 724 F.2d 1365, 1367–68 (9th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 2386, 81 L.Ed.2d 345 (1984) (counsel's tactical decision not to raise potential defense did not constitute ineffective assistance of counsel); *Rodriguez-Gonzalez v. INS*, 640 F.2d 1139, 1142 (9th Cir.1981) (counsel's tactical decision admitting entry without inspection and relying on labor law defense "even if in hindsight unwise," does not constitute ineffective assistance).

In summary, we reject Roe's claim that he was ineffectively represented and thereby denied due process.

### 4. *Suspension of Deportation*

Roe contends that the BIA abused its discretion in denying his application for suspension of deportation under 8 U.S.C. § 1254(a)(1) on the ground that he failed to establish the requisite element of extreme hardship. We are satisfied that the BIA acted within its discretion in concluding that Roe was statutorily ineligible for relief under 8 U.S.C. § 1254(a)(1) because he did not make the requisite showing of extreme hardship.[1]

■ 8 U.S.C. § 1254(a)(1) vests the Attorney General with the discretion to suspend the deportation of an otherwise deportable alien if the latter satisfies three threshold requirements: (1) continuous physical presence in the United States for seven years immediately preceding the date of application; (2) good moral character;

and (3) extreme hardship to the alien or to the alien's United States citizen or lawful permanent resident spouse, parent, or child, if the alien is deported. The alien bears the burden of demonstrating both statutory eligibility and equities meriting the favorable exercise of discretion. *See Villena v. INS*, 622 F.2d 1352, 1357 (9th Cir.1980) (en banc).

■ Section 1254(a)(1) also commits the definition of extreme hardship to the BIA, *see INS v. Wang*, 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam), and thus the BIA is free to construe extreme hardship narrowly. *Id.; Ahn v. INS*, 651 F.2d 1285, 1286–87 (9th Cir.1981). We may not substitute our definition of extreme hardship for the BIA's. *Chung v. INS*, 720 F.2d 1471, 1475 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2659, 81 L.Ed.2d 366 (1984); see also *Wang*, 450 U.S. 145, 101 S.Ct. 1031). We will reverse the BIA's denial of suspension of deportation only if it abused its discretion. *Chung*, 720 F.2d at 1475. Failure to consider all relevant facts bearing upon extreme hardship or to articulate the reasons for denying suspension of deportation constitutes an abuse of discretion. *Zavala-Bonilla v. INS*, 730 F.2d 562, 568 (9th Cir.1984).

■ In the administrative proceedings, Roe's claim of extreme hardship rested upon his United States citizen child and the forced sale of his restaurant business. The record reflects that the BIA gave serious consideration to these factors in evaluating Roe's claim of extreme hardship and gave specific reasons for concluding that "the hardship claimed by [Roe] is not the type of hardship contemplated by Congress in providing for the extraordinary relief of suspension of deportation." In these circumstances, we cannot say that the BIA abused its discretion in concluding that ex-

---

1. Having determined that Roe was statutorily ineligible for suspension of deportation we need

not reach the issue whether the denial of discretionary relief was proper.

treme hardship had not been demonstrated.[2]

### 5. IJ's Duty Under 8 C.F.R. § 242.17

■ Finally, we find no merit to Roe's claim that we must remand this case because the IJ violated 8 C.F.R. § 242.17 (1985) by failing to inform him of his right to apply for relief from deportation under 8 U.S.C. § 1251(f).

In *United States v. Barraza-Leon*, 575 F.2d 218 (9th Cir.1978), we held that "[s]ection 242.17(a) requires the immigration judge to inform the respondent of his 'apparent eligibility' [for the benefits enumerated in this paragraph]. Until the respondent himself or some other person puts information before the judge that makes such eligibility 'apparent,' this duty does not come into play." *Id.* at 222.

In the present case, we need not decide whether section 242.17(a) requires an IJ to inform an alien who has met his or her burden of demonstrating "apparent eligibility" of his or her opportunity to apply for relief from deportation under 8 U.S.C. § 1251(f). Here, Roe did not satisfy his burden of demonstrating apparent eligibility for section 1251(f) relief.

Under the provisions of 8 U.S.C. § 1251(f) in force at the time of Roe's deportation hearing,[3] an alien who entered the United States in violation of 8 U.S.C. § 1182(a)(14) was not "otherwise admissible" under section 1251(f) and thus was not entitled to section 1251(f) relief from deportation. *See Oloteo v. INS*, 643 F.2d 679, 683–84 (9th Cir.1981); *Chow v. INS*, 641 F.2d 1384, 1390–91 (9th Cir.1981); *Cacho v. INS*, 547 F.2d 1057, 1062 (9th Cir.1976). At his deportation hearing, Roe conceded that he entered the United States for the purpose of performing skilled or unskilled work and that he lacked a valid labor certification. By making such a concession Roe cast serious doubt upon his eligibility for such relief. In these circumstances, the requirements of section 242.17(a) were not triggered.

Our decision in *Duran v. INS*, 756 F.2d 1338 (9th Cir.1985), is not to the contrary. In *Duran* we remanded a petition to the BIA because, although the petitioner had met her burden of demonstrating her apparent eligibility for suspension of deportation under 8 U.S.C. § 1254(a)(1), the IJ failed to inform her of her opportunity to apply for such relief. *Id.* at 1341–42. Here, Roe never satisfied his burden of demonstrating apparent eligibility.

Furthermore, we are cognizant that shortly after Roe's deportation hearing Congress amended section 1251(f).[4] The

---

**2.** In his brief, Roe called our attention to the fact that his wife Sook was being processed for a third preference visa and he urged us to consider this factor in evaluating his claim of extreme hardship. Subsequently, Roe informed the court that his wife's status had been adjusted to that of a lawful permanent resident based on her own labor certification. Because these factors were not before the BIA, we are precluded from considering them. *See Patel v. INS*, 741 F.2d 1134, 1337 n. 1 (9th Cir.1984). Roe properly proceeded to present these factors to the BIA through a motion to reopen. *See id.*

**3.** The statute in force during the time of Roe's deportation hearing provided:

> (f) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or

child of a United States citizen or of an alien lawfully admitted for permanent residence. 8 U.S.C. § 1251(f) (1981).

**4.** The amended version of 8 U.S.C. § 1251(f), effective as of December 29, 1981, provides:

> (1)(A) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure or have procured visas or other documentation, or entry into the United States, by fraud or misrepresentation, whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in subsection (a)(19) of this section) who—
>
> (1) is the spouse, parent, or child of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and
>
> (ii) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of

amended version waives the grounds of inadmissibility enumerated under 8 U.S.C. §§ 1182(a)(14), (20) and (21), but it also commits section 1251(f) relief to the discretion of the Attorney General.

On appeal, the BIA considered Roe's claim for relief under section 1251(f), as amended. Based on the entire record before it, the BIA exercised its discretion against Roe because on all the facts before it, a grant of relief would not have furthered the purposes of the statute. A remand is unnecessary because the BIA has already considered this claim and no abuse of discretion is apparent from the record.[5]

## CONCLUSION

The BIA's order of deportation is AFFIRMED and the petition for review is DENIED.

In order to afford Roe the opportunity to seek a stay of deportation from the BIA pending resolution of his motion to reopen, we stay our mandate for 45 days. *See Alvarez-Ruiz v. INS,* 749 F.2d 1314, 1316 (9th Cir.1984) (per curiam). We express no opinion regarding the disposition of any motion for stay of deportation filed by Roe.

such entry except for those grounds of inadmissibility specified under paragraphs (14), (20), and (21) of section 1182(a) of this title which were a direct result of that fraud or misrepresentation.

(B) A waiver of deportation for fraud or misrepresentation granted under subparagraph (A) shall also operate to waive deportation based on the grounds of inadmissibility at entry described under subparagraph (A)(ii) directly resulting from such fraud or misrepresentation.

5. As we note in footnote 2, *supra,* Roe's wife recently acquired lawful permanent resident status. Roe has properly proceeded to seek reconsideration of his eligibility for section 1251(f) relief in his motion to reopen.