76 F.3d 387
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Roberto Jose MARTINEZ-AVELLAN; Lina del Socorro Gutierrez
de Martinez; Roberto Carlos Martinez; Josue
Israel Martinez, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70067.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 9, 1996.*
Decided Jan. 17, 1996.
 
 Before: SNEED, HALL, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Roberto Jose Martinez-Avellan, his wife Lina del Socorro Gutierrez de Martinez and his children Roberto Carlos and Josue Israel Martinez, all natives and citizens of Nicaragua, petition for review of: (1) the decision of the Board of Immigration Appeals ("BIA") affirming the order of an immigration judge ("IJ") denying their requests for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act, ("INA") 8 U.S.C. §§ 1158(a), 1253(h); and (2) the BIA's decision denying their motion to reopen deportation proceedings to allow them to apply for suspension of deportation under section 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition.
 
 
 3
 * Denial of Asylum
 
 
 4
 We review for abuse of discretion a denial of asylum. Kazlauskas v. INS, 46 F.3d 902, 905 (9th Cir.1995). We will uphold the BIA's determinations unless the applicant demonstrates "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).
 
 
 5
 To establish eligibility for asylum, Martinez-Avellan must show that he has a well-founded fear of persecution in Nicaragua on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. §§ 1101(a)(42), 1158(a); Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). Martinez-Avellan must show both a genuine subjective fear of persecution and an objectively reasonable fear. See Acewicz, 984 F.2d at 1061. "The objective inquiry requires 'a showing by credible, direct, and specific evidence of facts supporting a reasonable fear of persecution' " on account of one of the enumerated grounds. Prasad v. INS, 47 F.3d 336, 338 (9th Cir.1995) (quoting Shirazi-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir.1994)).
 
 
 6
 Martinez-Avellan contends that the BIA's decision that he failed to establish past persecution or a well founded fear of persecution is not supported by substantial evidence. This contention lacks merit.
 
 
 7
 At the IJ hearing, Martinez-Avellan claimed that he refused to comply with the Sandinistas' demand that he conduct armed night watch because his religious beliefs prevented him from killing. As a result of this refusal, Martinez-Avellan was fired from his job with the government forestry service. Martinez-Avellan claims that an anti-Sandinista political opinion was imputed to him, and that because of this, he was unable to find other employment, his food ration card was taken away, and he was harassed and threatened by Sandinista mobs.
 
 
 8
 Here, the BIA's finding that Martinez-Avellan lacked an objectively reasonable, well-founded fear of persecution is supported by substantial evidence. See Prasad, 47 F.3d at 338; Kazlauskas, 46 F.3d at 906. First, the BIA found that due to the presence of the newly elected democratic government in Nicaragua, it is unlikely that Martinez-Avellan would face persecution upon his return. See Kazlauskas, 46 F.3d at 906 n. 3 (stating that fundamental political changes are highly relevant to the likelihood of future persecution). Second, Martinez-Avellan's assertion that the Sandinistas are still in control of Nicaragua is insufficient to show that he would be subject to a "particularized threat of persecution" apart from the general population. See Kotasz v. INS, 31 F.3d 847, 851 (9th Cir.1994). Finally, even if Martinez-Avellan is correct in asserting that his sister was shot by the Sandinistas because of her anti-Sandinista political views, he failed to establish that his sister's political opinions were imputed to him by the Sandinistas. See Prasad, 47 F.3d at 340 (holding that attacks on family members do not establish a well-founded fear of persecution absent a pattern of persecution tied to petitioner).
 
 
 9
 Martinez-Avellan also contends that the BIA erred by finding that he was not eligible for asylum on the basis of past persecution. While past persecution alone can be sufficient independent of the risk of future persecution, it is limited to situations in which the applicant has suffered "under atrocious forms of persecution." Acewicz, 984 F.2d at 1062 (citing Matter of Chen, Int.Dec. 3104 at 4-5 (BIA 1989)).
 
 
 10
 Here, substantial evidence supports the BIA's determination that Martinez-Avellan's treatment by the Sandinistas did not rise to the level of persecution. See Ubau-Marenco v. INS, 67 F.3d 750, 754 (9th Cir.1995). Martinez-Avellan failed to establish that the economic hardship he was subjected to had a persecutory motive. See Desir v. Ilchert, 840 F.2d 723, 726 (9th Cir.1988). Similarly, Martinez-Avellan failed to establish that the Sandinistas believed he was a Contra or that his refusal to carry a weapon because of his religious beliefs has been interpreted as a political expression. See Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992). Given the evidence presented, we cannot say that "a reasonable factfinder would be compelled to conclude that [Martinez-Avellan] was subject to persecution." See Prasad, 47 F.3d at 339.
 
 II
 Motion to Reopen
 
 11
 Martinez-Avellan contends that the BIA abused its discretion by denying his motion to reopen because he established that he, his wife, his two sons and his citizen daughter would suffer extreme hardship if deported. Martinez-Avellan contends that the BIA failed to consider several specific factors which were offered to demonstrate extreme hardship. These contentions lack merit.
 
 
 12
 We review the BIA's decision to deny a motion to reopen for abuse of discretion. INS v. Rios-Pineda, 471 U.S. 444, 451 (1985); Watkins v. INS, 63 F.3d 844, 847 (9th Cir.1995). The alien bears the burden of demonstrating eligibility for suspension of deportation pursuant to section 1254(a)(1). Bu Roe v. INS, 771 F.2d 1328, 1333 (9th Cir.1985). Section 1254(a)(1) commits the definition of "extreme hardship" to the BIA, and thus the BIA may construe it narrowly. INS v. Jong Ha Wang, 450 U.S. 139, 145 (1981) (per curiam); Bu Roe, 771 F.2d at 1333. The BIA must consider all factors relevant to the determination of extreme hardship and state its reasons for denying relief. See Watkins, 63 F.3d at 848.
 
 
 13
 Here, the BIA found that Martinez-Avellan had not demonstrated "extreme hardship" and thus had not established a prima facie case for suspension of deportation. In reaching this conclusion, the BIA considered Martinez-Avellan's nine years of residency in the United States, the fact that he and his wife have an employment history, that the children attend public schools here, and that they are active members of their church community. The BIA also considered the fact that Martinez-Avellan's daughter is a U.S. citizen, and that two of his sisters are lawful permanent residents. Additionally, the BIA took into account Martinez-Avellan's evidence that Nicaragua is suffering from poor economic conditions.
 
 
 14
 Martinez-Avellan nevertheless contends that the BIA abused its discretion because it failed to consider, inter alia, the hardship that the children would suffer as a result of relocating to Nicaragua without being able to speak the native language. The BIA's opinion, while not specifically mentioning the children's inability to speak Spanish, considers hardship to Martinez-Avellan's children as a relevant factor. The BIA concludes that Martinez-Avellan failed to show that the family would suffer "extreme" hardship beyond the hardship of readjustment which is similar to that suffered by most aliens who are deported.
 
 
 15
 Given that Martinez-Avellan bore the burden of demonstrating eligibility for suspension of deportation, see Bu Roe, 771 F.2d at 1333, we cannot say that the BIA's conclusion that Martinez-Avellan failed to demonstrate "extreme hardship" was arbitrary, irrational, or contrary to law, see Ahwazi v. INS, 751 F.2d 1120, 1122 (9th Cir.1985). Accordingly, the BIA did not abuse its discretion by denying Martinez-Avellan's motion to reopen. See Rios-Pineda, 471 U.S. at 451; Ahwazi, 751 F.2d at 1123.[1]
 
 
 16
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Martinez-Avellan's spouse, Lina Gutierrez de Martinez, as well as their two sons Roberto and Josue were included in Martinez-Avellan's application pursuant to Section 208(c) of the INA. Therefore, their claims for asylum are derivative of his claims, and are denied. See 8 U.S.C. § 1158(c)