81 F.3d 167
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eddie Harry Kwabena AMOAKUH, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70830.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 15, 1996.*
Decided March 26, 1996.
 
 1
 Before: HALL and BRUNETTI, Circuit Judges, and WEINER, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Eddie Harry Kwabena Amoakuh, a native of Ghana, appeals the Board of Immigration Appeals' (BIA) dismissal of his appeal of the Immigration Judge's (IJ) denial of his applications for suspension of deportation and voluntary departure, 8 U.S.C. §§ 1254(a)(1) and (e), and the IJ's order deporting him under 8 U.S.C. § 1251(a)(9). We deny his petition for review.
 
 I.
 
 4
 Amoakuh first contests the BIA's denial of suspension of deportation. To be eligible for this relief, an alien must prove that (1) he has been continuously present in the United States for the seven years preceding his application; (2) he has demonstrated good moral character during that period; and (3) he would be subjected to "extreme hardship" if deported.[1] 8 U.S.C. § 1254(a)(1); Bu Roe v. INS, 771 F.2d 1328, 1333 (9th Cir.1985). Once eligible, an alien is entitled to suspension only in the Attorney General's discretion. INS v. Rios-Pineda, 471 U.S. 444, 445-46 (1985). The BIA concurred with the IJ's finding that Amoakuh was ineligible for suspension. The BIA also concurred with the IJ's ruling in the alternative that he would not grant Amoakuh suspension as a matter of discretion. Amoakuh argues that the BIA's decision must be reversed because the BIA did not properly set forth its analysis of the above components.
 
 
 5
 When analyzing the components of eligibility, the BIA must "consider all the relevant facts bearing on [that component and must] articulate the reasons for denying suspension of deportation."[2] Jara-Navarette v. INS, 813 F.2d 1340, 1342 (9th Cir.1986) (citing Bu Roe, 771 F.2d at 1333); Zavala-Bonilla v. INS, 730 F.2d 562, 567-68 (9th Cir.1984) (finding abuse of discretion when BIA gave no analysis of "extreme hardship" other than a one-sentence reference to its discussion on "persecution"). See Watkins v. INS, 63 F.3d 844, 849 (9th Cir.1995) (finding abuse of discretion when BIA ignored psychological reports detailing the effect of deportation on the alien's children); Jara-Navarette, 813 F.2d at 1344 (finding abuse of discretion where BIA did not look at facts showing "extreme hardship" to alien's children); Mejia-Carrillo v. INS, 656 F.2d 520 (9th Cir.1981) (finding abuse of discretion when BIA concluded there was no "extreme hardship" but did not consider non-economic facts tending to show hardship); cf. Hassan v. INS, 927 F.2d 465, 468 (9th Cir.1991) (no abuse of discretion when BIA looked at all relevant facts); Bu Roe, 771 F.2d at 1333-34 (same).[3]
 
 
 6
 When determining whether to exercise discretion (once eligibility is established), the BIA also must "weigh both favorable and unfavorable factors." De La Luz v. INS, 713 F.2d 545, 545 (9th Cir.1983). Failure to examine favorable factors is an abuse of discretion. Id.
 
 
 7
 Amoakuh first contends that the BIA's analysis of whether he possessed good moral character was deficient because: (1) the BIA failed to indicate how his past fraudulent behavior (including a false claim of a dependent in his 1987 tax return, a false assertion of United States citizenship in a 1988 passport application, and false assertions regarding citizenship and past loan debt in three 1989 mortgage applications) affected his moral character; (2) the BIA only "mentioned" but did not "weigh" the facts it discussed; (3) the BIA impermissibly expanded 8 U.S.C. § 1101(f), the section defining categories of per se bad moral character, when it found he had bad moral character; and (4) the BIA ignored certain relevant facts in reaching its conclusion that he did not possess good moral character.
 
 
 8
 We find these arguments meritless. Amoakuh's first claim borders on the ridiculous: The BIA is not required to articulate the obvious--Amoakuh's five fraudulent acts negatively affected his moral character. Amoakuh's second claim fails because the BIA only has to "weigh" factors when it exercises its discretion--not when it determines statutory eligibility. See cases cited supra. His third claim also fails. While it is possible for the BIA, by making a finding of "bad" moral character in sole reliance on an alien's wrongful act, to create a de facto per se category of "bad" moral character, see Torres-Guzman, 804 F.2d at 534, the BIA did not do so in this case because it considered facts favoring Amoakuh before deciding he had "bad" moral character. Thus, the BIA did not in this case run afoul of the rule forbidding the BIA from creating new per se categories. Id. Amoakuh's final claim fares just as poorly. While it is true that the BIA did not specifically mention his teaching job at the community college or his roots in the community,[4] it did state that it:
 
 
 9
 reached [its] conclusion after weighing all of the evidence presented, despite [Amoakuh's] lack of criminal record, despite his professional and educational accomplishments, despite the affidavits from his acquaintances on his behalf, and despite his attempted explanation that he merely engaged in misjudgments when he committed the acts of fraud.
 
 
 10
 Given that the "evidence presented" included the IJ's opinion--which discussed the allegedly ignored facts--we find that the BIA considered all of the facts relevant to Amoakuh's moral character.
 
 
 11
 Amoakuh next argues that the BIA's "extreme hardship" discussion was inadequate because it did not mention: (1) how he had no business contacts in Ghana; (2) how he would be unable to work in a high-technology engineering job in Ghana's poor economic climate; (3) how leaving the United States would affect him; and (4) how the political climate in Ghana was unstable. After reviewing the BIA's opinion--which discusses Amoakuh's "reduced job opportunities," his versatile job qualifications, his "community ties" to other professionals, and the "harsh political situation in Ghana"--we do not believe that the BIA's failure to mention the first three facts in the same manner Amoakuh does renders its analysis deficient.
 
 
 12
 Amoakuh finally attacks the BIA's decision not to exercise discretion in Amoakuh's favor, claiming that it did not properly "weigh" the favorable and unfavorable factors.[5] The BIA stated:
 
 
 13
 [W]e concur with the immigration judge's denial of suspension of deportation and voluntary departure as a discretionary matter despite the respondent's lack of criminal convictions, given the strong negative factors of his false claims to the United States citizenship on the passport application submitted in 1988 and the applications for mortgage loans taken out in 1989 as well as his false statements on the income tax returns filed in 1987, which constitute fraudulent misbehavior and which evidence his evasion of federal laws. We find that such adverse factors are not overcome by the positive factors of record, although we have considered the respondent's work history, educational attainments, community ties, and property ties.
 
 
 14
 We do not find any deficiency in the BIA's shorthand reference to the "positive factors of record" which it discussed throughout the preceding three pages of its opinion; nor are we persuaded that the BIA did not "weigh" the relevant factors--it specifically stated that the negative factors "are not overcome" by the positive ones. The BIA's analysis is sufficient.
 
 II.
 
 15
 Amoakuh also challenges the BIA's denial of his voluntary departure. An alien is eligible for departure if he proves that he has been of good moral character for the five years preceding his application; as with suspension of deportation, the Attorney General retains ultimate discretion whether to grant this relief to eligible aliens. 8 U.S.C. § 1254(e). Amoakuh challenges the BIA's rulings that he did not demonstrate his good moral character and that it would not exercise its discretion in favor of departure; he claims that its analysis on these issues was deficient. We disagree.
 
 
 16
 We review the BIA's decision regarding good moral character for substantial evidence. Mabugat v. INS, 937 F.2d 426, 431 (9th Cir.1991). Because the BIA's analysis of "good moral character" was identical for both suspension of deportation and voluntary departure, our conclusion that the BIA's discussion of good moral character was sufficient in the suspension context applies with equal force here.
 
 
 17
 We review the BIA's exercise of discretion denying voluntary departure for an abuse of discretion. Villaneuva-Franco v. INS, 802 F.2d 327, 329 (9th Cir.1986). The BIA does not abuse its discretion as long as it "support[s] its conclusion 'with a reasoned explanation based on legitimate concerns.' " Abedini v. INS, 971 F.2d 188, 193 (9th Cir.1992); see also Hernandez-Luis, 869 F.2d at 496 (finding no abuse of discretion where BIA noted positive and negative factors bearing on exercise of discretion); Villaneuva-Franco, 802 F.2d at 327 (same); cf. Campos-Granillo v. INS, 12 F.3d 849, 852 (9th Cir.1993) (finding abuse of discretion where IJ only looked at unfavorable factors). We believe the BIA's discussion, as cited above, is such a "reasoned explanation."
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34.4
 
 
 **
 The Honorable Charles R. Weiner, Senior United States District Judge for Eastern Pennsylvania, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We need not consider the recent birth of Amoakuh's daughter, a U.S. citizen, because we evaluate the BIA's decision using only evidence the BIA had before it. The proper way to account for her birth is to move the BIA to reopen the proceedings. See Jara-Navarette v. INS, 813 F.2d 1340, 1344 (9th Cir.1986)
 
 
 [2]
 Although the standard under which we review the BIA's findings of eligibility for suspension of deportation is not settled, compare Ramirez-Durazo v. INS, 794 F.2d 491, 498 (9th Cir.1986) (reviewing for abuse of discretion) with Hernandez-Luis v. INS, 869 F.2d 496 (9th Cir.1989) (reviewing for substantial evidence), cases using either standard review the adequacy of the BIA's findings using the same "relevant facts" standard
 
 
 [3]
 The BIA's analysis of the "good moral character" factor is subject to the same scrutiny. See Torres-Guzman v. INS, 804 F.2d 531, 533 (9th Cir.1986)
 
 
 [4]
 All of the other facts Amoakuh claims were ignored actually appear in the BIA's opinion
 
 
 [5]
 Amoakuh also contends that the BIA relied on an "improper factor" in exercising its discretion against him. He claims that the BIA reached its conclusion that he made "false statements on the income tax returns filed in 1987," by relying upon the IJ's conclusion that Amoakuh "falsely listed" his girlfriend's daughter "as his dependent (and as his daughter ) in his 1986 income tax return." He claims that he never intended to represent her as his daughter (only as his dependent)
 While is true that "the inclusion of an improper factor in reaching a discretionary decision is ordinarily grounds for remand," Yepes-Prado v. INS, 10 F.3d 1363, 1366 (9th Cir.1993), the BIA did not rely on an improper factor in this case. To begin with, it is entirely likely that the IJ was correct in finding that Amoakuh intended to report the dependent child as his daughter. Even if he was not, nowhere does the BIA say that it relied on the IJ when it made its de novo review of the record. The BIA only stated that he made "false statements" on his 1987 return--the BIA's statement is true whether or not Amoakuh intended to represent the girl as his daughter. The BIA did not therefore rely on any improper factor.